Michael S. HERNANDEZ, Appellant,

v.

STATE of Texas, Appellee.

No. 04–02–00330–CR.

Court of Appeals of Texas,
San Antonio.

Jan. 31, 2003.

Rehearing Overruled March 24, 2003.

Stephanie L. Stevens, Carey Antwine, Ronald J. Hope and Teresa Benitez, San Antonio, for Appellant.

Kevin P. Yeary, Asst. Criminal Dist. Atty., San Antonio, for Appellee.

Sitting: SARAH B. DUNCAN, Justice, KAREN ANGELINI, Justice, SANDEE BRYAN MARION, Justice.

Opinion by KAREN ANGELINI, Justice.

Michael S. Hernandez appeals his conviction for operating a motor vehicle while intoxicated. On appeal, he raises eight issues. First, he argues that he was entitled to additional jury instructions on the presumption of innocence. In his second through fifth issues, he argues that he was entitled to the suppression of his self-incriminating statement. In his six and seventh issues, he argues that he was entitled to two additional jury instructions on the admissibility of that statement. In his eighth issue, he argues that he was entitled to question the jury during voir dire on a subjective standard of not having the normal use of faculties. We overrule all of his issues and affirm the judgment of the trial court.

## BACKGROUND

Hernandez and his family went to a barbecue and a fight-watching party at relatives' homes. He was driving home on Southwest Military Drive in San Antonio at 1:00 a.m. on September 10, 2000 when SAPD Officer Richard Blair noticed that Hernandez was driving 62 miles per hour in a 45 mile per hour zone. Blair followed Hernandez, who continued speeding. Hernandez was also weaving between traffic without using his turn signals.

Blair pulled Hernandez over. As Blair walked up to the car, he noticed the strong odor of alcoholic beverages or beer. Blair also noticed Hernandez's bloodshot eyes.

When asked, Hernandez said he was not wearing contact lenses. Blair asked Hernandez if he had consumed any alcoholic beverages. He said, "I have had too much to drink." Blair asked Hernandez to perform three field sobriety tests. Hernandez failed all three tests.[1] Blair concluded that Hernandez was not in full control of his mental and physical faculties and made up his mind to arrest him. However, before Blair formally arrested Hernandez, Blair asked him how many he had to drink that night. Blair testified that Hernandez responded that "he had drunk nine beers of mixed brands." Finally, Blair read Hernandez his *Miranda*[2] rights, placed handcuffs on him, and placed him in the patrol car.

Hernandez was charged by information with operating a motor vehicle while intoxicated by not having the normal use of his mental and physical faculties. TEX. PEN. CODE ANN. § 49.04(a) (Vernon Supp.2002). Before trial, Hernandez moved to suppress the statement about having too much to drink and the statement about having drunk nine beers of mixed brands. The trial court denied the motion. During voir dire questioning, Hernandez objected to the State's use of an objective standard for not having the normal use of faculties. The trial court overruled the objection. Before the trial court read the charge to the jury, Hernandez requested instructions on the presumption of innocence and on the admissibility of the "nine beers" statement. The trial court denied the requests.

1. First, Hernandez performed the horizontal gaze nystagmus, and out of six signs of intoxication, he showed six (more than the required four), including: lack of smooth pursuit, distinct nystagmus at maximum deviation, and onset prior to 45 degrees. Also, his body was swaying back and forth during the test. Next, he performed the walk and turn, and out of eight signs of intoxication, he showed three (more than the required two), including: failing to touch his heel to his toe, stepping off the line, and losing his balance. Finally, he performed the one leg stand, and out of five signs of intoxication, he showed three (more than the required two), including: swaying back and forth, placing his foot down twice, and hopping up and down.

2. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Hernandez was convicted and sentenced to four months in jail. That sentence was suspended to six months of probation. Hernandez appeals the trial court's denial of his requested jury instructions on the presumption of innocence and the admissibility of his self-incriminating statement, the denial of his motion to suppress that statement, and the overruling of his objection during voir dire to the use of an objective standard for not having the normal use of faculties.

### INSTRUCTION ON THE PRESUMPTION OF INNOCENCE

■ In his first issue, Hernandez argues that he was entitled to an instruction on the presumption of innocence. At trial, Hernandez's counsel asked for Defendant's Special Requested Jury Instruction No. 2:

All persons are presumed to be innocent and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt. The fact that he has been arrested, confined, or otherwise charged with, the offense gives rise to no inference of guilt at his trial.

The request was denied.

Before closing arguments, the trial court must "deliver to the jury ... a written charge distinctly setting forth the law applicable to the case...." TEX.CODE CRIM. PROC. ANN. art. 36.14 (Vernon Supp.2002). The question we face is whether the charge adequately stated the law applicable to the case, or whether an additional instruction on the presumption of innocence was necessary.

In *Taylor v. Kentucky*, 436 U.S. 478, 98 S.Ct. 1930, 56 L.Ed.2d 468 (1978), the Court found that an instruction on the presumption of innocence was necessary. *Id.* at 490, 98 S.Ct. 1930. The instruction would have had a "purging" effect, reducing the danger that the jury would convict

based on the fact that the defendant was arrested and indicted or based on facts outside the evidence at trial. *Id.* at 485–86, 98 S.Ct. 1930. Those dangers were present because the trial court's instruction was "skeletal," not emphasizing the prosecution's duty to prove guilt beyond a reasonable doubt and not stressing the duty to judge the defendant only on the evidence at trial. *Id.* at 486, 98 S.Ct. 1930.

■ However, no constitutional rule requires that the trial court give an instruction on the presumption of innocence in every criminal trial. *Kentucky v. Whorton*, 441 U.S. 786, 788, 99 S.Ct. 2088, 60 L.Ed.2d 640 (1979). Failing to give an instruction on the presumption of innocence "must be evaluated in light of the totality of the circumstances—including all the instructions to the jury, the arguments of counsel, whether the weight of the evidence was overwhelming, and other relevant factors—to determine whether the defendant received a constitutionally fair trial." *Id.* at 789, 99 S.Ct. 2088; *see also Delo v. Lashley*, 507 U.S. 272, 278, 113 S.Ct. 1222, 122 L.Ed.2d 620 (1993) (noting that an instruction is warranted only when there is a genuine danger that the jury will convict based on something other than the lawful evidence proved beyond a reasonable doubt).

In this case, the totality of the circumstances in Hernandez's trial shows that the trial court did not err in refusing to give the requested instruction on the presumption of innocence. First, the charge included instructions that (1) the jury could not convict Hernandez unless they found him guilty beyond a reasonable doubt; (2) they could not consider Hernandez's choice to not testify; (3) they could not take into consideration any evidence not introduced in court at trial; and (4) because the jurors are not witnesses, they should not relate to

other jurors their own experience or knowledge. Also, the prosecutor did not make any statements that would mislead the jury about the burden of proof beyond a reasonable doubt or cause the jury to rely on facts that were not in evidence at trial. Next, the overwhelming weight of the evidence showed that Hernandez was guilty: Hernandez's car smelled like alcohol and he had bloodshot eyes. He failed all three field sobriety tests. Also, he made self-incriminating statements. Finally, as another relevant factor, we note that during voir dire, the trial court explained to the jury that "a person is presumed innocent until each and every element of the offense charged is proven beyond a reasonable doubt." After voir dire, the trial court asked the jury to "keep all the principles that we talked about during voir dire in mind because they are in effect throughout the trial." Accordingly, we overrule Hernandez's first issue.

## MOTION TO SUPPRESS THE "NINE BEERS" STATEMENT

In his second, third, fourth, and fifth issues, Hernandez appeals the trial court's denial of his motion to suppress his self-incriminating statement to Officer Blair. The statement was that he had drunk nine beers of mixed brands. Hernandez made the statement before Blair had read him his *Miranda* rights. Also, it was not electronically recorded. It was, however, made before Hernandez was under formal arrest.

Each issue argues for the suppression of the "nine beers" statement on a distinct legal ground. Hernandez's second issue argues for suppression because Hernandez had not yet received his *Miranda* warnings, and relies on the Fifth and Fourteenth Amendments to the United States Constitution. His third issue also argues for the suppression of the statement because Hernandez had not yet received warnings about his rights, but relies on the "due course of law" provisions of the Texas Constitution, article I, sections 13 and 19. (At the trial court, he relied on article I, section 10, concerning self-incrimination.) The fourth issue argues for suppression based on the lack of statutory warnings, and relies on article 38.22 of the Texas Code of Criminal Procedure. His fifth issue again argues for suppression of the statement, and also relies on article 38.22, but asks that the oral statement be suppressed because it was not electronically recorded. These issues are treated together because they all share a common question: Was Hernandez in custody when he made the "nine beers" statement?

### 1. Waiver

■ Before considering the substance of these points, we examine whether Hernandez has waived his third issue. The State argues that Hernandez waived his claim by not providing authorities in his appellate brief, *see* TEX.R.APP. P. 38.1(h), and by complaining to the trial court without stating sections 13 and 19 of the Texas Constitution as the grounds, *see* TEX.R.APP. P. 33.1(a)(1)(A). In *Salazar v. State*, 38 S.W.3d 141 (Tex.Crim.App.2001), the court dismissed three issues for which the appellant had cited no authority. *Id.* at 147; *see also Muniz v. State*, 851 S.W.2d 238, 251 (Tex.Crim.App.1993) (declining to review a state constitutional argument because the appellant had not provided any authority concerning the Texas Constitution or how its protection differed from that provided by the United States Constitution). For the same reason, we dismiss Hernandez's third issue.

### 2. Standard of Review

■ The appropriate standard for reviewing a trial court's ruling on a motion to

suppress is bifurcated: we give almost total deference to the determination of historical facts while reviewing the application of the law de novo. *Maxwell v. State,* 73 S.W.3d 278, 281 (Tex.Crim.App.), *cert. denied,* —— U.S.——, 123 S.Ct. 603, 154 L.Ed.2d 527 (2002).

### 3. Custodial Interrogation

■ If Hernandez was in custody when he made the "nine beers" statement, it would be inadmissible. It appears, however, that he was not yet in custody when he made the statement.

■ If an individual is subjected to questioning while in custody without being first warned of his rights and without voluntarily waiving those rights, then any evidence obtained as part of that questioning may not be used against him at trial. *See Miranda v. Arizona,* 384 U.S. 436, 479, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *see also* TEX.CODE CRIM. PROC. ANN. art. 38.22 (Vernon 1979 & Supp.2002). However, *Miranda* and article 38.22 only apply to custodial interrogation. *Dowthitt v. State,* 931 S.W.2d 244, 263 (Tex.Crim.App.1996).

■ Being in custody is distinguishable from being held as part of a temporary investigative detention. *See Abernathy v. State,* 963 S.W.2d 822, 824 n. 4 (Tex.App.-San Antonio 1998, pet. ref'd). An officer who lacks probable cause but whose observations lead to a reasonable suspicion that a particular person has committed, is committing, or is about to commit a crime, may detain that person briefly in order to investigate the circumstances that provoke the suspicion. *Berkemer v. McCarty,* 468 U.S. 420, 439, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984); *see also Terry v. Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (discussing an officer's restricted search when he reasonably concludes that criminal activity may be afoot). The officer may ask a moderate number of questions to determine the person's identity and to try to gather information to confirm or dispel the officer's suspicions. *McCarty,* 468 U.S. at 439, 104 S.Ct. 3138.

■ Like a temporary investigative detention, a traffic stop does not exert "upon a detained person pressures that sufficiently impair his free exercise of his privilege against self-incrimination to require that he be warned of his constitutional rights." *Id.* at 437, 104 S.Ct. 3138. This is for two reasons: Traffic stops tend to be brief, so drivers expect to answer a few questions and be on their way shortly. Also, traffic stops tend to be in public rather than at a station house, so drivers do not feel completely at the mercy of the police. *Id.* at 437–39, 104 S.Ct. 3138.

■ In determining whether an individual was in custody, a court must examine all of the circumstances, but the ultimate inquiry is simply whether there was a formal arrest or restraint on freedom of movement to the degree associated with a formal arrest. *California v. Beheler,* 463 U.S. 1121, 1125, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983). The relevant question is not the officer's subjective intent, but rather how a reasonable person in the suspect's position would have understood the situation. *McCarty,* 468 U.S. at 442, 104 S.Ct. 3138. The "reasonable person" standard assumes an innocent person. *Dowthitt,* 931 S.W.2d at 254. The officer's subjective view that the individual under questioning is a suspect, if undisclosed, is irrelevant to the question of whether an individual is in custody for *Miranda* purposes. *Stansbury v. California,* 511 U.S. 318, 324, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994).

The traffic stop in this case was an investigative detention based on a reasonable suspicion that a crime was being committed. Specifically, Officer Blair ob-

served Hernandez speeding and weaving between lanes without signaling. As a result, Blair pulled Hernandez over. When Blair noticed the smell of alcohol coming from the car and Hernandez's bloodshot eyes, he began asking questions to confirm his suspicion that Hernandez was driving while intoxicated. In particular, Blair asked Hernandez if he had drunk any alcoholic beverages or if he was wearing contact lenses. In addition to the brief questioning, Blair administered three field sobriety tests to Hernandez.

On these facts, Hernandez was not in custody for *Miranda* purposes until Blair formally arrested him. The brief questioning and field sobriety tests occurred along the side of a public road, where Hernandez would not have felt completely at the mercy of the police and would have expected to be able to proceed along his way if he passed the field sobriety tests. After Hernandez failed the field sobriety tests, Blair formed a subjective intention to arrest him for DWI. However, Blair did not immediately communicate that intention to Hernandez. Only after Hernandez made the "nine beers" statement did Blair read him his *Miranda* rights and place him under formal arrest by handcuffing him and placing him in the patrol car. Because Hernandez was not yet in custody when he made the "nine beers" statement, the statement was properly admitted against him at trial. Based on this conclu-

sion, we overrule Hernandez's second and fourth issues.

### 4. Electronic Recording

■ Hernandez's fifth issue asks for the suppression of the "nine beers" statement because it was an oral statement but was not electronically recorded. In general, no oral statement made as a result of custodial interrogation shall be admissible at trial unless an electronic recording is made of the statement. TEX.CODE CRIM. PROC. ANN. art. 38.22 § 3(a)(1) (Vernon Supp.2002). However, an electronic recording is not necessary for the admission of oral statements made while the accused was not in custody. *See Guardiola v. State*, 20 S.W.3d 216, 222–23 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd). As noted above, Hernandez was not in custody when he made the "nine beers" statement. Therefore, the statement was admissible, and we overrule Hernandez's fifth issue.

### INSTRUCTIONS ON THE ADMISSIBILITY OF THE "NINE BEERS" STATEMENT

■ In his sixth and seventh issues, Hernandez argues that he was entitled to two instructions on the admissibility of his statement that he had drunk nine beers of mixed brands. First, he requested an instruction that the statement could not be admitted unless the jury found beyond a reasonable doubt that he had been given *Miranda* warnings beforehand.[3] His re-

---

**3.** Hernandez's counsel read the requested instruction into the record:

"You are instructed that under our law a confession of a defendant made while the defendant was in jail or other place of confinement or in the custody of an officer shall be admissible in evidence if it appears that the same was freely and voluntarily made without compulsion or persuasion provided, however, that it be made in writing and signed by the accused, and shown that the accused has been warned prior to

making such statement or confession, by the person to whom the statement is made that, one, he has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at his trial; two, any statement he makes may be used as evidence against him in court; three, he has a right to have a lawyer present to advise him prior to and during any questioning; four, he may have his own lawyer, or, if he is unable to employ a lawyer, he has the right to have a

quest was denied. Hernandez's counsel also requested an instruction that the statement would be inadmissible if it was not electronically recorded.[4] This request was also denied.

■ "When the issue is raised by the evidence, the trial judge shall appropriately instruct the jury, generally, on the law pertaining to such statement." TEX.CODE CRIM. PROC. ANN. art. 38.22 § 7 (Vernon 1979). When the evidence fails to raise an issue, the trial court commits no error in refusing a requested instruction. *Muniz v. State*, 851 S.W.2d 238, 254 (Tex.Crim. App.1993). The evidence which raises the issue may be strong, weak, contradicted, unimpeached, or unbelievable. *Id.*

As we concluded earlier, Hernandez made the statements during a traffic stop before he was formally arrested. After Hernandez failed the field sobriety tests, Blair formed a subjective intention to arrest him, but Blair did not communicate that intention to Hernandez. Therefore, a reasonable innocent person in Hernandez's position would still have believed that he was not in custody.

Because the evidence did not raise a factual issue about whether Hernandez was in custody, the instructions on *Miranda* warnings and electronic recording were not warranted. Therefore, the trial court did not err in denying the requested instructions. We overrule Hernandez's sixth and seventh issues.

### VOIR DIRE QUESTIONING REGARDING THE NORMAL USE OF FACULTIES

■ In his eighth issue, Hernandez argues that the trial court erred by overruling his objection to the State's voir dire questioning based on an objective standard for not having the normal use of faculties. Hernandez argues that it was also error for the trial court to sustain the State's objection to his voir dire questioning based on a subjective standard for not having the normal use of faculties. Because the objective standard is a correct statement of the law, we will overrule this issue.

---

lawyer appointed to advise him prior to and during any questions; and five, he has the right to terminate the interview or questioning at any time."

"So in this case, if you find from the evidence, or if you have a reasonable doubt thereof, that prior to the time the defendant gave the alleged statement or confession to Officer Blair, if he did give it, the said Officer Blair did not warn the defendant in the respects just outlined, or as to any one of such requirements just outlined, then you will wholly disregard the alleged statement or confession and not consider it for any purpose nor any evidence obtained as a result thereof. If, however, you find beyond a reasonable doubt that the aforementioned warning was given the defendant prior to his having made such statement, if he did make it, still, before you may consider such statement as evidence in this case, you must find from the evidence beyond a reasonable doubt that prior to and during such statement, if any, the defendant know-

ingly, intelligently, and voluntarily waived the rights herein above set out in the said warning, and unless you so find, or if you have a reasonable doubt thereof, you will not consider the statement or confession for any purpose whatsoever or any evidence obtained as a result of the statement."

4. Hernandez's counsel also read this requested instruction into the record:

"No oral or sign language statement of an accused made as a result of custodial interrogation shall be admissible against the accused in a criminal proceeding unless, number one, an electronic recording, which may include motion picture, video tape, or other visual recording, is made of the statement." And we would ask that an instruction be devised for the jury that would apply that law to the facts of this case for the jury to decide whether or not they believe that the confession was made in compliance with the law in the State of Texas.

"A person commits an offense if the person is intoxicated while operating a motor vehicle in a public place." TEX. PEN. CODE ANN. § 49.04(a) (Vernon Supp.2002). The statutory definition of intoxication requires either "not having the normal use of mental or physical faculties by reason of the introduction of alcohol ... into the body," *id.* § 49.01(2)(A), or "having an alcohol concentration of 0.08 or more," *id.* § 49.01(2)(B). In *Atkins v. State*, 990 S.W.2d 763 (Tex.App.-Austin 1999, pet. ref'd), the court used the terms "subjective" and "objective" to refer to the different definitions of intoxication: "subjective" as not having the normal use of mental and physical faculties, and "objective" as meeting or exceeding a specific alcohol concentration. *See id.* at 765. As used in the record in this case, "subjective" refers to not having the normal use of faculties when compared to the defendant's own non-intoxicated behavior, while "objective" refers to not having the normal use of faculties when compared to the non-intoxicated behavior of a reasonable person.

### 1. The Record

During voir dire, the State questioned the jury on a objective standard for not having the normal use of faculties:

> Do you have to know the person in order to determine if they're intoxicated? Can you meet the person for the very first time and see all the signs of intoxication and say, you know what, this guy is intoxicated? ... Have you ever been to a party or a restaurant where you have seen somebody and said, Man, that guy is intoxicated? You had never met him before in your life? ... Normal use as defined by the law is you compare the person—you compare the defendant to a normal sober individual.

Hernandez objected, arguing that the proper standard is not having normal use of the faculties, not of a normal person, but of the particular defendant on trial. The objection was overruled.

Later, Hernandez's counsel questioned the jury using a subjective standard for not having the normal use of faculties: "[W]hen we're looking to see is the person normal or not, we look—we need to find out is it normal for that particular person?" Several jurors agreed with her that some individuals are less athletic and coordinated than others. She continued:

> We have to decide for that individual person we're testing, are they performing normally? ... You can imagine if you were an acrobat for Ringling Brothers Circus. You'd walked a high wire every day. The police officer says to walk a straight line on the ground. It would be almost a joke, right? But you couldn't compare that person's performance to somebody who had never done something like that before. It wouldn't be the same, right? You want to individualize it. You have to look at the person and say, is this normal for the person?

The State objected, arguing that the standard of comparison for not having the normal use of faculties is a normal, non-intoxicated person. The trial court sustained the objection.

The record contains some evidence suggesting Hernandez may have lacked the normal use of faculties for a reason besides intoxication. He may have trouble walking and keeping his balance even when he is not intoxicated, as Hernandez's wife, Casandra Valdez, testified. He may have been tired at 1:00 a.m. after being awake all evening. Or, he may have been upset: on the drive home, Hernandez and Valdez were arguing because she saw him sitting next to an unfamiliar single girl at the fight-watching party.

The jury charge did not specify whether to compare Hernandez's behavior with his own non-intoxicated behavior or with that of a reasonable non-intoxicated person. It simply mirrored the statutory definition: "The term 'intoxicated' means not having the normal use of one's mental faculties or not having the normal use of one's physical faculties by reason of the introduction of alcohol into the body." The trial court gave no further instruction specifying the objective or subjective standard.

In closing arguments, the State made no mention of the objective standard of not having the normal use of faculties. Hernandez, however, made several statements that implied a subjective standard. For example, his counsel argued, "[T]he State [has] attempt[ed] to prove to you beyond a reasonable doubt that Michael Hernandez had lost the normal use of *his* mental and physical faculties." [5] (emphasis added.)

## 2. The Reason for Not Having the Normal Use of Faculties

Hernandez appears to be concerned the State's use of the objective standard caused the jury to disregard the evidence that he lacked the normal use of faculties for a reason besides intoxication. However, even applying the objective standard, an individual can be found intoxicated only if he lacked the normal use of faculties by reason of the introduction of a substance into his body. The subjective standard, by comparison, places an unnecessary burden on the State to present evidence of the defendant's own non-intoxicated faculties.

 Voir dire questions that misstate the law are improper. *Thompson v.*

*State,* 95 S.W.3d 537, 541 (Tex.App.-Houston [1st Dist.] 2002, no pet. h.). The objective standard, however, is a correct statement of the law because it requires the jury to consider the reason why the defendant does not have the normal use of faculties. The statutory definition of intoxication specifies that the defendant "not hav[e] the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body." Tex. Pen.Code Ann. § 49.01(2)(A) (Vernon Supp.2002). A defendant cannot be found to be intoxicated if he lacks the normal use of mental or physical faculties for a different reason, such as disability, illness, fatigue, stress, or clumsiness. *See Massie v. State,* 744 S.W.2d 314, 316 (Tex.App.-Dallas 1988, pet. ref'd); *see also Davy v. State,* 67 S.W.3d 382, 395–96 (Tex.App.-Waco 2001, no pet.) (finding that the charge as a whole correctly instructed the jury because it required the jury to find beyond a reasonable doubt that the defendant's loss of the normal use of faculties was due to intoxicants, not any other factors); *State v. Cordell,* 34 S.W.3d 719, 721 (Tex.App.-Fort Worth 2000, pet. ref'd) (noting that "fatigue or any other purely natural deterioration of the body is not listed" in the statutory definition of intoxication); *Atkins,* 990 S.W.2d at 769. *But see also Murphy v. State,* 44 S.W.3d 656, 662 (Tex. App.-Austin 2001, no pet.) (finding that including the objective standard in the jury charge was harmful error). Furthermore, using the subjective standard would impose an unnecessary burden on the

---

5. In the same passage of closing argument, Hernandez's counsel also made these statements: "He had not lost the normal use of *his* mental and physical faculties;" "But the State has not shown beyond a reasonable doubt that Michael Hernandez had lost *his* normal use of mental and physical faculties;" and "I know that there was enough reasonable doubt shown that Michael Hernandez had not lost the normal use of *his* mental and physical faculties." (emphasis added.)

State to prove what the defendant's non-intoxicated faculties were. *See Massie,* 744 S.W.2d at 316 ("If there was evidence that appellant could not use his faculties on the occasion in question, in the manner in which the normal non-intoxicated person would be able to use his faculties, the evidence is sufficient to convict him unless the jury finds that his inability to perform on that occasion is not due to intoxicants (e.g. diabetes; epilepsy)."); *see also Fogle v. State,* 988 S.W.2d 891, 894 (Tex.App.-Fort Worth 1999, pet. ref'd); *Reagan v. State,* 968 S.W.2d 571, 572 (Tex.App.-Texarkana 1998, pet. ref'd).

Applying the objective standard, the jury will still necessarily consider Hernandez's evidence that he failed the sobriety tests for a reason besides intoxication. To determine whether Hernandez was intoxicated, the jury first compared Hernandez's behavior with that of a reasonable, non-intoxicated person. As the record shows, Hernandez failed three sobriety tests that a reasonable, non-intoxicated person would have passed. Next, the jury would determine the reason why Hernandez did not have the normal use of faculties. The State argued that Hernandez did not have the normal use of faculties because he had been drinking alcoholic beverages. Specifically, they introduced Hernandez's statements to Officer Blair that he had too much to drink and that he had drunk nine beers of mixed brands. For the defense, Hernandez's wife testified that he ordinarily has trouble walking or keeping his balance. She also testified that he was tired at 1:00 a.m. and was upset because they were having an argument. Based on this evidence, the jury could have concluded that the reason Hernandez did not have the normal use of faculties was that he is uncoordinated or because he was tired or upset. So, the objective standard did not prevent the jury from considering Hernandez's evidence that he did not have the

normal use of faculties. Apparently, the jury concluded that Hernandez lacked the normal use of faculties because he had been drinking alcoholic beverages, and accordingly rendered a guilty verdict. The trial court correctly overruled Hernandez's objection to the State's use of the objective standard and sustained the State's objection to Hernandez's use of the subjective standard. We overrule Hernandez's eighth issue.

### CONCLUSION

We find that Hernandez was not entitled to an instruction on the presumption of innocence. Also, we find that Hernandez was not entitled to the suppression of his statement that he had drunk nine beers of mixed brands or to an instruction regarding the admissibility of that statement. In addition, we find that the trial court properly allowed voir dire questioning using an objective standard of not having the normal use of faculties. Therefore, we affirm the trial court's judgment of conviction.