Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio




## MEMORANDUM OPINION

No. 04-10-00367-CR

Troy Lee **SULLIVAN**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 399th Judicial District Court, Bexar County, Texas
Trial Court No. 2008-CR-3974
Honorable Juanita A. Vasquez-Gardner, Judge Presiding

Opinion by:   Phylis J. Speedlin, Justice

Sitting:   Phylis J. Speedlin, Justice
Rebecca Simmons, Justice
Steven C. Hilbig, Justice

Delivered and Filed:  April 13, 2011

AFFIRMED

In his sole issue on appeal, Troy Lee Sullivan challenges the trial court's denial of his motion to suppress his videotaped statement.  We affirm.

### BACKGROUND

Sullivan was indicted on thirty counts of aggravated sexual assault of a child and indecency with a child by contact.  He filed a pre-trial motion to suppress his videotaped interview with police.  After a hearing, the trial court denied the motion to suppress, finding

Sullivan was not in custody and his statement was made freely and voluntarily. Sullivan then pled no contest to several of the counts as part of an open plea. The court imposed a sentence of thirty years' confinement on each of the multiple counts, with such sentences to run concurrently. Sullivan now appeals.

## ANALYSIS

Sullivan asserts the trial court abused its discretion in denying his motion to suppress his statement because it was made during a custodial interrogation and he was not given his *Miranda*[1] warnings, in violation of the Fifth and Fourteenth Amendments to the United States Constitution, Article I, section 10 of Texas Constitution, and article 38.22, section 2, of the Texas Code of Criminal Procedure. U.S. CONST. amends. V, XIV; TEX. CONST. art. I, § 10; TEX. CODE CRIM. PROC. ANN. art. 38.22, § 2 (West 2005). We review a trial court's denial of a motion to suppress under a bifurcated standard. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). We afford almost total deference to the trial court's determination of historical facts supported by the record, especially when the findings are based on assessment of a witness's credibility and demeanor. *Id.*; *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We apply the same deferential standard when reviewing the court's ruling on "application of law to fact questions" or "mixed questions of law and fact" if resolution of those issues turns on an evaluation of credibility. *Amador*, 221 S.W.3d at 673. We review de novo the court's application of the law to the facts, and resolution of mixed questions of law and fact, that do not depend upon credibility assessments. *Id.* When, as here, the trial court makes express findings of fact, we view the evidence in the light most favorable to the court's ruling and determine whether the evidence supports the fact findings. *Valtierra*, 310 S.W.3d at 447.

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

At the suppression hearing, the trial court stated it had previously reviewed the DVD of Sullivan's videotaped interview. Detective Bruce Thomas Wilson testified that he called Sullivan and invited him to come down for an interview to "give his side of the story" on a case. Wilson conceded that Sullivan was the focus of the investigation, but characterized their meeting as an interview, not an interrogation, explaining it was not "adversarial" but "very low key." Wilson stated he did not give Sullivan the *Miranda* warnings because he was not in custody. Instead, Wilson gave Sullivan the *Beheler* admonishment, which informs a suspect that he is not under arrest and is free to leave at any time. *See California v. Beheler*, 463 U.S. 1121, 1121-22 (1983). Wilson stated he told Sullivan twice that he was free to leave and did not have to speak to him; he had to interrupt Sullivan to give him the admonishment because Sullivan had already started talking. Sullivan drove himself to the police station, was not handcuffed, was free to leave at any time during the two-hour interview, and drove himself home. Sullivan was seated closest to the door in the interview room, had a Coke during the interview, and used his cell phone several times; Wilson stepped out of the room when Sullivan spoke to his wife on the phone. Wilson testified that Sullivan was "matter of fact," not scared or nervous, and he did not coerce or threaten Sullivan in any way; to the contrary, Wilson described Sullivan as fully and voluntarily engaged in the conversation. Sullivan never indicated he wanted to leave. The next day, Wilson walked through an arrest warrant and called to inform Sullivan of the warrant; he permitted Sullivan to turn himself in the next day, which he did. Detective Wilson testified that prior to the interview he did not have sufficient probable cause "that he was comfortable with" to arrest Sullivan. Sullivan testified at the hearing that if he had known he had the right to remain silent and the right to an attorney during the interview, he would have invoked those rights.

Sullivan stated he did not believe he could simply get up and walk away during the interview; he thought he would be arrested if he tried to walk out.

The trial court made fact findings in accordance with Detective Wilson's testimony as set forth above. Based on those fact findings, the court concluded that Sullivan was not in custody or under arrest, or substantially deprived of his freedom by the conduct of the officers and the circumstances surrounding the giving of his statement. The court also noted, "In fact, if one carefully observes the DVD, it is clear to the Court that Detective Wilson is almost trying to get rid of Mr. Sullivan who wants to continue talking." The court concluded that Sullivan's statement was made freely and voluntarily, and was not coerced or enticed. Based on its fact findings and conclusions of law, the court ruled that Sullivan's statement was admissible.

It is a fundamental principle of our justice system that when a person is in custody and is not warned of his *Miranda* rights before being subjected to questioning, any evidence obtained as a result of such questioning is not admissible at trial. *See Miranda v. Arizona*, 384 U.S. 436, 479 (1966); *see also* TEX. CODE CRIM. PROC. ANN. art. 38.22 (West 2005); *Hernandez v. State*, 107 S.W.3d 41, 47 (Tex. App.—San Antonio 2003, pet. ref'd) (*Miranda* and article 38.22 apply to custodial interrogations only). *Miranda* warnings are not required, however, when a person voluntarily comes to the police station for questioning, and, although considered a suspect, is not arrested and is permitted to leave after the interview. *Beheler*, 463 U.S. at 1125; *Meek v. State*, 790 S.W.2d 618, 621 (Tex. Crim. App. 1990). A consensual interview that begins as non-custodial may, however, escalate into a custodial interrogation due to police conduct during the encounter. *Dowthitt v. State*, 931 S.W.2d 244, 255 (Tex. Crim. App. 1996). In determining whether a person was "in custody" at the time of questioning, we examine the totality of the circumstances to determine whether a reasonable person would believe his freedom of movement

was restrained to the degree associated with a formal arrest. *Beheler*, 463 U.S. at 1125; *Stansbury v. California*, 511 U.S. 318, 322-23 (1994); *Dowthitt*, 931 S.W.2d at 254 (custody determination is entirely based on objective circumstances). There are four situations which may constitute custody: (1) when the suspect is physically deprived of his freedom of action in any significant way; (2) when a law enforcement officer tells the suspect he cannot leave; (3) when officers create a situation that would lead a reasonable person to believe his freedom of movement has been significantly restricted; and (4) when there is probable cause to arrest and officers do not tell the suspect he is free to leave. *Dowthitt*, 931 S.W.2d at 255.

Here, there is no evidence that any of the four custody situations arose during the interview. Sullivan was never handcuffed or otherwise physically deprived of his freedom. Detective Wilson explicitly told Sullivan two times that he was not under arrest, was free to leave, and was under no obligation to talk to him; Wilson explained the door to the interview room was shut for privacy reasons only and Sullivan could walk out at any time. Sullivan's subjective belief that he was not in reality free to leave is not relevant as the custody determination is objectively based. *Stansbury*, 511 U.S. at 322-23. Sullivan's freedom of movement was not significantly restricted because he arrived and left in his own vehicle; he was permitted to make phone calls and to speak to his wife in private during the interview; and he was not arrested until a warrant was obtained the next day, at which time he was permitted to turn himself in. Finally, the fourth situation did not arise, even if Wilson had probable cause to arrest Sullivan during the interview, because Wilson consistently told Sullivan he was free to leave and in fact Sullivan drove himself home after the interview. *See Dowthitt*, 931 S.W.2d at

The record is clear that Sullivan's interview with Wilson was consensual, not custodial; therefore, the trial court did not abuse its discretion in denying Sullivan's motion to suppress.

Phylis J. Speedlin, Justice

DO NOT PUBLISH