ACCEPTED
01-14-00247-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
7/23/2015 4:03:18 PM
CHRISTOPHER PRINE
CLERK

# No. 01-14-00247-CR

In the
Court of Appeals
For the
First District of Texas
At Houston

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

7/23/2015 4:03:18 PM

CHRISTOPHER A. PRINE
Clerk

———————◆———————

## No. 1330035

In the 174th District Court
Harris County, Texas

———————◆———————

## TERRI COX FERGUSON

*Appellant*

V.

## THE STATE OF TEXAS

*Appellee*

———————◆———————

## APPELLANT'S MOTION FOR REHEARING AND EN BANC RECONSIDERATION

———————◆———————

**DAVID MITCHAM**
State Bar No:  14205300
1314 Texas, Suite 1314
Houston, Texas 77002
Tel.:  713/222-1616
FAX No.:  713/222-6262
mitchamlaw@att.net

i

# TABLE OF CONTENTS

AUTHORITIES...…………………………………………………...……iii

INTRODUCTION................................................................**Error! Bookmark not defined.**

SUMMARY OF THE ARGUMENT.………….………………………...…….1

POINT FOR REHEARING…………………………..………………...……..1

**THE EVIDENCE WAS INSUFFICIENT, AS TO THE ELEMENT OF INTOXICATION, TO SUPPORT THE CONVICTION.**

CONCLUSION…………………………………..…………………….10

CERTIFICATE OF COMPLIANCE…………………..…………………….10

CERTIFICATE OF SEVICE…………………………..…………………..11

# INDEX OF AUTHORITIES

**CASES**

*Adames v. State*, 353 S.W.3d 854 (Tex. Crim. App. 2011) ....................................................2

*Hernandez v. State*, 107 S.W.3d 41 (Tex. App.- San Antonio, 2003, pet. Ref'd) ................3

*Jackson v. Virginia*, 99 S Ct. 2781(1979) ....................................................... 1, 2, 10

*Smithhart v. State*, 503 S.W.2d 283 (Tex.Crim.App.1973) .................................................... 3,4

*In re Winship,* 397 U.S. 358 (1970) ........................................................................2

**TO THE HONORABLE COURT OF APPEALS:**

## INTRODUCTION

On July 9, 2015, the court filed a memorandum opinion affirming appellant's conviction. Appellant incorporates by reference her brief and the Court's opinion in support of her motion for rehearing and en banc reconsideration.



## POINT FOR REHEARING

**THE EVIDENCE WAS INSUFFICIENT, AS TO THE ELEMENT OF INTOXICATION, TO SUPPORT THE CONVICTION.**



## SUMMARY OF THE ARGUMENT

The Court's opinion erred in holding that the evidence is sufficient to establish that the appellant was intoxicated by not having the normal use of her mental and physical faculties by reason of the introduction of a controlled substance, a drug, a dangerous drug, a combination of those substances, or any substance into her body.



## ARGUMENT

The Court reviewed the evidence using the *Jackson* standard of review. "When reviewing the sufficiency of the evidence, we view all of the evidence in the light most

favorable to the verdict to determine whether any rational fact finder could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Adames v. State*, 353 S.W.3d 854, 859 (Tex. Crim. App. 2011) (holding that *Jackson* standard is only standard to use when determining sufficiency of evidence)." (Op. 3) However, under this standard, evidence is insufficient to support a conviction if considering all record evidence in the light most favorable to the verdict, a factfinder could not have rationally found that each essential element of the charged offense was proven beyond a reasonable doubt. *See Jackson,* 443 U.S. at 319, 99 S.Ct. 2781; *In re Winship,* 397 U.S. 358, 361, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). Evidence is insufficient under this standard in four circumstances: (1) the record contains no evidence probative of an element of the offense; (2) the record contains a mere "modicum" of evidence probative of an element of the offense; (3) the evidence conclusively establishes a reasonable doubt; and (4) the acts alleged do not constitute the criminal offense charged. *See Jackson,* 443 U.S. at 314, 318 n. 11, 320, 99 S.Ct. 2781.

The evidence fails to show that appellant did not have the normal use of her mental or physical faculties as a result of any substance. No officer testified that appellant did not have the normal use of her physical and mental faculties. Further, no evidence shows "a controlled substance, a drug, a dangerous drug, a combination of those substances, or any substance" caused appellant to not have the normal use of her mental or physical faculties.

The evidence and testimony in the instant case is devoid of expert testimony as found in various other cases to reasonably find that appellant did not have normal use of her mental or physical faculties resulting from the introduction of a drug or combination of drugs.

"While intoxicated" is the contested element, but the reason for not having the normal use is important and necessary since, by definition, one cannot be found to be intoxicated if he lacks the normal use of mental or physical faculties for a different reason, such as disability, illness, fatigue, stress, or seizures. An individual can only be found intoxicated by reason of the introduction of a substance into the body. *Hernandez v. State*, 107 S.W.3d 41 (Tex. App.- San Antonio, 2003, pet. Ref'd)

In the present case, none of the investigating officers smelled alcohol, nor did they find any alcohol, or suspect alcohol as the reason for not having the normal use of mental or physical faculties.

After being arrested, appellant was asked and agreed to submit the draw of a blood sample at Memorial Hermann Southeast Hospital. (R.R. III. 149-160) The blood test was negative for alcohol. Furthermore, none of the toxicology experts presented by the State could say with any reasonable degree of medical certainty that the medications and marijuana in the appellant's blood alone or together caused loss of the normal use of her mental or physical faculties.

Alcohol intoxication is a common occurrence and requires no expertise, but the rule as to whether a person is under the influence of drugs is different. *Smithhart v.*

*State*, 503 S.W.2d 283 (Tex.Crim.App.1973). *Smithhart* was charged with operating a vehicle while under the influence of drugs to the degree, which renders the driver incapable of safely operating a vehicle. In *Smithhart*, the police officer testified to many symptoms of possible intoxication: incoherent speech, glassy eyes, admission of recent ingestion of valium and drinking vodka earlier, and an accident, but unable to connect the symptoms to the reason for not having the normal use of faculties since the officer was not qualified to give an opinion as to drugs.

A person waking up from a seizure might experience fatigue, confusion, and difficulty with gross motor skills such as walking, dilated pupils, flushing, retrograde amnesia, and thick-tongued speech. Appellant coming out of a seizure, which can mimic intoxication, could have caused the symptoms observed by the officers.

The first person to come into direct contact with the appellant following the accident was Deputy Michael White who stated she was unresponsive to his requests to get out of the car, very incoherent in a daze, had "foam" coming out of her mouth and was shaking (R.R. III. 84-86, 102-103)

Stephen Bynum observed the appellant just before Deputy White and stated that the appellant was either drunk or having a seizure. (R.R. VI. 84-85). He stated that when he looked at her face she did not appear to be drunk but was having some type of episode. (R.R. VI. 88)

Sergeant Robert Francis conducted field sobriety tests on the appellant. The first test he administered was the Horizontal Gaze Nystagmus Test. The first thing he

4

noticed was that she had unequal pupil size. (R.R. IV. 33) He asked her if she had a recent head injury and she stated that her dog had knocked her down and she injured her head. He did not detect any odors of alcohol. He was not able to complete the HGN test because of the unequal pupil size. However, he stated that no nystagmus was present. (R.R. IV. 34) The appellant was unable to perform the walk and turn test as well as the one leg stand because of prior injuries. (R.R. IV. 57-59). He also had her perform the Rhomberg Test and detected a sway and she estimated 30 seconds as 20 seconds. (R.R. IV. 59) She had issues doing the alphabet test but was able to do a hand dexterity test. (R.R. IV. 61) Since Sergeant Francis was not currently certified as a Drug Recognition Expert he was not allow to opine as to whether the appellant was intoxicated. He stated that he did not smell any marijuana in the appellant's vehicle, on her breath or on her person. (R.R. IV. 125-126)

Deputy James Stanley read the appellant her warnings and took her to the hospital to obtain a blood draw and expressed no opinion as to whether she was intoxicated or any signs of intoxication. (R.R. IV. 143-151)

Dr. Walterscheid related the drugs reflected in the lab analysis report to include no alcohol but clonazepam, 7 – aminoclonazepam, temazepam, carisoprodol, meprobamate, delta-9– tetrahydrocannabinol and nor–carboxy–tetrahydrocannabinol. (R.R. V. 120-121) At the conclusion of his testimony he answered that he could not testify with any reasonable, reliable scientific basis for determining based upon his

5

reading of the toxicology report and the evidence before the court that the appellant was intoxicated at the time in question on September 29, 2011. (R.R. V. 139)

Dr. Plunkett stated that based upon the State's toxicology reports an opinion could not be given that appellant was intoxicated or impaired. (R.R. VI. 129) She stated that the lab report reflected low levels of each of the drugs reflected in the report (R.R. VII. 118-125) and that the report did not reflect amounts consistent with someone who had taken 10 somas. (R.R. VII. 124)

Nu Lienko stated that somewhere between 4 and 5 o'clock, the appellant came in and picked up an order to go. She sounded normal when she ordered the sandwiches over the phone and appeared normal when she picked up the sandwiches. (R.R. VI. 14-21)

Dr. Irwin S. Novak stated a seizure is an electrical disorder of the brain. The patient may be confused, may stare, be disoriented and may be able to do some motor activities. They are unaware of their surroundings and have slurred speech, shaking, salivation and foaming at the mouth. (R.R. VII. 47) They can continue to drive a car but they would drive it erratically. (R.R. VII. 47) From reading the description of the appellant at the scene and the police reports, DVD's of the appellant and witness statements he was able to determine that it was consistent with a seizure. (R.R. VII. 49)

Dr. Novak stated that he has performed thousands of Horizontal Gaze Nystagmus tests and that if a patient had unequal pupil sizes it would be consistent

6

with someone who had just had a seizure. (R.R. VII. 51) The person should be taken to a hospital because they would be in a postictal state and may be disoriented, confused, unsteady, have slurred speech, be befuddled and may try to fill in details but their memory is faulty. (R.R. VII. 52) They will not remember that they had a seizure and will not remember events that occurred during the postictal state. (R.R. VII. 53) Following a seizure it could take from minutes to days before their memory kicks back in. (R.R. VII. 54) A person in the state of seizure is not capable of a conscious act. If they are driving a car they cannot keep a proper lookout, control their speed properly, maintain a single lane of traffic or avoid collision with persons or property. (R.R. VII. 53-54)

The fact that the appellant had no nystagmus was significant because patients have nystagmus when they are taking medications such as benzodiazepines and non-benzodiazepines in high levels. Anisocoria or unequal pupils would not be seen. The unequal pupil sizes would indicate another medical condition such as seizures had occurred. (R.R. VII. 56) When appellant was examined and determined to have unequal pupil sizes she should have been taken to the hospital and been evaluated. (R.R. VII. 57)

From Dr. Novak's review of the DVD reflecting the interrogation by the police officers she appeared to be inconsistent and disoriented and a person who has had a seizure is unaware that the seizure occurred. (R.R. VII. 57-58) The first seizure while driving occurs frequently and is possibly unrecognized. They have seizures - - these

7

are paroxysmal episodic events that can occur anywhere under any circumstances whether they're awake or asleep, but the first seizure while driving is a clinically recognize event and possibly under recognized. (R.R. VII. 60)

Dr. Novak conducted a medical examination of appellant beginning on September 13, 2013, which included an EKG, electrocardiogram, an EEG, electroencephalogram, a 72 – hour EEG with video and ambulatory monitoring, brain MRI, magnetic resonance scan imaging, chest X-ray, and urinalysis.

He also reviewed medical records for the Houston Methodist Hospital's emergency room for September 25, 2013. The medical records reflected that she had had a seizure. (R.R. VII. 62-63) The EMS records of the incident noted, and an M.D. was present, that there were multiple episodes of peti mal, which probably reflect complex partial seizures. (R.R. VII. 63) Additionally the EEG that was recorded revealed findings that were consistent with diffused disturbance of brain function and focal potentially epileptogenic lesions. (R.R. VII. 64-65) Appellant had a interictal abnormality that in her case was right and left, the frontal and central areas of the brain which is consistent with a seizure but no actual seizures that were ongoing at the time of the 72- hour monitors. Normal healthy patients do not have interictal activity. They have normal EEG's and do not have spikes and they don't have sharp waves or spikes in waves. (R.R. VII. 65) Seizures are episodic paroxysmal events that occur out of the background, out of the blue. (R.R. VII. 66-67)

Dr. Novak also reviewed the records of appellant being admitted to St. Luke's Hospital at The Vintage on January 21, 2014. When she was admitted she had an altered mental status, probable seizure and possible pseudo seizure. Pseudo seizures are unconscious seizures. They have no abnormality in electrical activity. They occur less often than regular seizures and there's no abnormality in the EEG. The patients are unconscious of what happens. It's a subconscious disorder and falls into psychiatric dysfunction and what they call disassociated state. (R.R. VII. 70-71) At St. Luke's the appellant was intubated after sedation and admitted on a respirator. (R.R. VII. 71)

In-reference to partial complex seizures it is possible that a person could be on the beltway and go into a seizure and continue to drive. (R.R. VII. 74) The description of the appellant that was reflected in the offense report would be consistent with a tonic seizure. (R.R. VII. 102) The only time unequal pupil size are the result of drugs is if the drugs were put in the eye. (R.R. VII. 103)

The symptoms of unequal pupils, no nystagmus in the eyes, responsive to light, foaming at the mouth, nonresponsive to questions, and shaking uncontrollably are consistent with a seizure. (R.R. VII. 128)

Facts supporting an essential element, "reason for not having the normal use", were not proved and a rational trier of fact could not have found beyond a reasonable doubt the essential element that the appellant did not have normal use of her mental faculties by reason of the introduction of alcohol, a controlled substance, a drug, or a

dangerous drug into the body, or a combination of two or more of these substances into the body. Even viewing the evidence in the light most favorable to the verdict, no rational trier of fact could have found the essential element of "intoxication" of the crime of driving while intoxicated beyond a reasonable doubt. *Jackson v. Virginia*, 99 S.Ct. 2781 (1979).

———————◆———————

## CONCLUSION

It is respectfully submitted that the Court grant this motion for rehearing and/or grant en banc reconsideration.

## CERTIFICATE OF COMPLIANCE

This is to certify that the foregoing instrument has a total of 2636 words.

*David Mitcham*
**DAVID MITCHAM**
State Bar No: 14205300
1314 Texas, Suite 1314
Houston, Texas 77002
Tel.: 713/222-1616
FAX No.: 713/222-6262

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing instrument has been mailed to the appellee's attorney at the following address on July 23, 2015.

ALAN CURRY
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas 77002

*David Mitcham*
**DAVID MITCHAM**
State Bar No:  14205300
1314 Texas, Suite 1314
Houston, Texas 77002
Tel.:  713/222-1616
FAX No.:  713/222-6262
mitchamlaw@att.net

Date:  July 22, 2015

11