

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-16-00422-CR

Ruben **ZAVALA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No. 2, Bexar County, Texas
Trial Court No. 485563
Honorable Jason Wolff, Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:       Sandee Bryan Marion, Chief Justice
               Karen Angelini, Justice
               Irene Rios, Justice

Delivered and Filed:  February 8, 2017

AFFIRMED

A jury convicted Ruben Zavala of driving while intoxicated. In a single issue, Zavala argues the trial court erred when it denied his motions to suppress statements he made to a police officer during a traffic stop. Zavala contends his statements should have been suppressed because they were made during a custodial interrogation in violation of the Fifth Amendment and article 38.22 of the Texas Code of Criminal Procedure. We affirm.

## BACKGROUND

Shortly after midnight on March 13, 2015, on-duty San Antonio Police Officer Robert Gaitan was driving on Military Drive in San Antonio, when he saw a car abruptly change lanes and cut off another car. Gaitan initiated a traffic stop of the car that had performed the unsafe maneuver. After the car stopped, Gaitan approached the driver of the car, who was Zavala, and asked him how he was and, referring to his erratic driving, asked him what he was doing. Zavala responded by saying that he had been drinking and using his cell phone. Shortly thereafter, Gaitan directed Zavala to get out of his car and, after talking to Zavala for a while, administered part of a field sobriety test to Zavala. Gaitan then advised Zavala that another officer would be coming to the scene to conduct additional field sobriety testing. After the other officer conducted additional field sobriety testing, Zavala was formally arrested for driving while intoxicated.

Zavala was charged with driving while intoxicated and pled not guilty. Zavala filed motions to suppress his oral statements to the police. The trial court held a suppression hearing. Zavala offered, and the trial court admitted, a video and audio recording from the dashboard camera mounted in Gaitan's patrol car. Gaitan also testified at the hearing. The trial court concluded that Zavala was temporarily detained and that the detention did not escalate to the point of an arrest.[1] Because Zavala's statements were not the product of a custodial interrogation, the

---

[1]Specifically, the trial court stated:

> The officer testified—and I found him to be credible—that he observed traffic violations—a couple of traffic violations, one of which presented a danger to others on the roadway. It was 12:30 at night. Upon approach he smelled intoxicants. There was admission of drinking. He observed glassy, red eyes, slurred speech, swayed while he was walking. Again, the admission of drinking. Certainly, the officer has reasonable suspicion to detain the defendant and do an investigation as to whether or not probable cause existed to arrest for driving while intoxicated.
>
> He conducted an HGN, and while that may not get in front of a jury, he can certainly use it to inform his decision to further detain the defendant. It was a temporary detention. He added that he'd get another officer to give a full and complete test, and, "If you pass the test, you pass the test."

trial court denied the motions to suppress. The case was tried before a jury, which found Zavala guilty of driving while intoxicated. This appeal ensued.

APPLICABLE LAW AND STANDARD OF REVIEW

Under the Fifth Amendment, statements made by a suspect during a custodial interrogation are inadmissible unless certain warnings were given to the suspect before he makes those statements. *Miranda v. Arizona*, 384 U.S. 436, 444-45 (1966); *see* U.S. CONST. amend. V. Article 38.22 of the Texas Code of Criminal Procedure also requires the suppression of statements made during a custodial interrogation unless certain statutorily prescribed warnings are given. TEX. CODE CRIM. PROC. ANN. art. 38.22 (West Supp. 2016). *Miranda* and article 38.22 apply only to custodial interrogation. *Herrera v. State*, 241 S.W.3d 520, 526 (Tex. Crim. App. 2007). Texas courts construe "custody" under article 38.22 consistent with the meaning of "custody" for purposes of *Miranda*. *Id.*

The purpose of the warnings required by *Miranda* and article 38.22 is to safeguard a person's privilege against self-incrimination during custodial interrogation. *Gardner v. State*, 306 S.W.3d 274, 294 (Tex. Crim. App. 2009). "If an individual is subjected to questioning while in custody without first being warned of his rights and without voluntarily waiving those rights, then any evidence obtained as part of that questioning may not be used against him at trial." *Hernandez v. State*, 107 S.W.3d 41, 47 (Tex. App.—San Antonio 2003, pet. ref'd). When seeking the suppression of unwarned statements, the defendant bears the burden to prove that the statements were the product of custodial interrogation. *Herrera*, 241 S.W.3d at 526.

---

[P]rior to doing any kind of pat-down on [Zavala], he asked, "Do you have any knives?" Certainly, he can do a search for officer safety and [he] does ask if it's okay to search. I'll be honest with you, I don't know what the defendant says. I can't tell whether he says yes or no, but he at least physically complies.

All of this, in my opinion, is a temporary detention. It did not escalate into the point of an arrest, and therefore, your motion is denied.

As a general rule, persons temporarily detained pursuant to an ordinary traffic stop are not "in custody" for purposes of *Miranda*. *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984); *Hernandez*, 107 S.W.3d at 47. A traffic stop that includes questioning and field sobriety tests does not, without more, rise to the level of a custodial interrogation. *Berkemer*, 468 U.S. at 440-42; *State v. Stevenson*, 958 S.W.2d 824, 828-29 (Tex. Crim. App. 1997). While a routine traffic stop generally does not place a person in custody for *Miranda* purposes, it may escalate from a non-custodial detention to a custodial detention when the detainee's freedom of movement is restrained to the degree associated with a formal arrest. *State v. Ortiz*, 382 S.W.3d 367, 372 (Tex. Crim. App. 2012).

Both an investigative detention and an arrest involve a restraint on a person's freedom of movement. *State v. Sheppard*, 271 S.W.3d 281, 290 (Tex. Crim. App. 2008). An arrest, however, is a greater restraint upon a person's freedom of movement than is a temporary detention. *Id*. There is no bright-line test for distinguishing between an investigative detention and arrest; instead, courts consider a number of factors, including: (1) the amount of force displayed; (2) the duration of the detention; (3) the efficiency of the investigative process and whether it is conducted at the original location or the person is transported to another location; (4) the officer's expressed intent—that is, whether he told the person that he was under arrest or was being detained only for a temporary investigation; and (5) any other relevant factors. *Id*. at 291. When the degree of incapacitation appears more than necessary to simply safeguard the officers and assure the suspect's presence during a period of investigation, it suggests the detention is an arrest. *Id*. Furthermore, handcuffing is but one of a range of relevant factors in a custody determination. *Ortiz*, 382 S.W.3d at 374.

In determining whether a person is in custody, courts determine whether, given the circumstances surrounding the interrogation, a reasonable person would have perceived the

detention to be a restraint on his movement comparable to the restraint of formal arrest. *Id*. at 372. In evaluating whether a reasonable person would believe his freedom has been restrained to the degree of formal arrest, we consider the objective factors surrounding the detention. *Id*. Unless the officer manifests his belief to the detainee that he is a suspect, the subjective beliefs of the detaining officer are not relevant to the determination of whether a reasonable person in the detainee's position would believe he is in custody. *Id*. A suspect is "in custody" for *Miranda* purposes if a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest under the circumstances of the interrogation. *Herrera*, 241 S.W.3d at 525.

A trial court's ultimate custody determination presents a mixed question of law and fact. *Id.* at 526. Therefore, we give almost total deference to the trial court's custody determination when the questions of historical fact turn on credibility and demeanor. *Id*. at 526-27. Conversely, when the questions of historical fact do not turn on credibility and demeanor we review the trial court's custody determination *de novo*. *Id*. at 527. "The ultimate legal determination of whether an individual was in custody requires an appellate court to take the facts, as assessed for weight and credibility by the trial court, and then to make a legal determination as to whether those facts amount to custody under the law." *State v. Saenz*, 411 S.W.3d 488, 494 (Tex. Crim. App. 2013).

**ANALYSIS**

In his brief, Zavala argues that he was "in custody" for purposes of *Miranda* and article 38.22 when Gaitan asked him to exit his car and opened the car door from the outside. According to Zavala, an innocent person under these circumstances would have felt that he was in custody at this time. In response, the State argues that the trial court correctly determined that Zavala was only temporarily detained. The facts are uncontested. We, therefore, apply a *de novo* standard of

review and make a legal determination as to whether Zavala's investigative detention escalated from a non-custodial detention to a custodial detention at the relevant time.

The evidence presented at the suppression hearing consisted of Gaitan's testimony and the video and audio recording from the dashboard camera mounted in Gaitan's patrol car. Gaitan testified that he pulled Zavala over after observing him commit two traffic violations.[2] The second violation occurred when Zavala cut off another vehicle causing it to brake "pretty hard." According to Gaitan, Zavala would have caused an accident if the other driver had not been paying attention. Gaitan said he made Zavala aware of the traffic violations and Zavala admitted that he had been consuming alcohol. Gaitan also noticed Zavala's eyes were red and glassy, his speech was slurred, and he was swaying while he walked. Gaitan performed part of a field sobriety test and asked a driving while intoxicated task force officer to come to the scene to continue the investigation. Gaitan said he never placed Zavala in handcuffs, nor did he place him inside his patrol car. According to Gaitan, he pulled the door open after Zavala "undid" the door from the interior door handle. At one point, Gaitan told Zavala he was driving under the influence and that his driving was unsafe.

The video and audio recording shows that at the beginning of the stop Gaitan said to Zavala, "How's it going? What's wrong with you?" Zavala responded, but his response is inaudible. Gaitan then said, "What's wrong with you? Huh? Why are you driving like that, man?" Again, Zavala's response is inaudible. Shortly thereafter, Gaitan asked Zavala, "Let me see your license? Do you have a license?" Zavala told Gaitan he had a license and he handed something to him. Gaitan then directed Zavala to remain in his car.

---

[2]Although Gaitan did not testify about the details of the first violation, the video and audio recording indicates that it consisted of Zavala driving in the median towards another vehicle and then suddenly veering off to one side.

Next, Gaitan walked back to his patrol car, where he remained for about ten minutes. Gaitan then returned to Zavala's car, approaching the driver's side window. A second officer approached the passenger-side window. As Gaitan approached, he asked Zavala, "It's Ruben, right?" Gaitan then directed Zavala "to get outside the vehicle." Gaitan placed his hand on the window frame of the car and pulled on the door to open it. Gaitan then asked, "How much did you have to drink?" Zavala apparently answered, "Two beers," to which Gaitan responded, "It's always two beers." As Zavala exited the car, he dropped something and Gaitan told Zavala that he would pick it up for him. Gaitan then directed Zavala to walk to the area behind Zavala's car. Zavala complied, walking to the area behind his car on his own. After picking up the dropped object, Gaitan walked with Zavala to the area behind Zavala's car. As they walked, Gaitan did not touch Zavala, nor did he handcuff Zavala or restrain Zavala in any way.

Once both Gaitan and Zavala arrived at the area behind Zavala's car, Gaitan and Zavala stood face to face and had a conversation. Zavala started telling him about his current problems. Gaitan told Zavala that he was a grown man and not to cry in front of him. Gaitan recounted some of the details of Zavala's erratic driving and then administered part of a field sobriety test to Zavala. Gaitan asked Zavala if he was sure that he had consumed only two beers. Thereafter, Zavala pleaded with Gaitan to allow him to resume driving his car. Gaitan told Zavala he could not allow him to resume driving because it would be unsafe for other drivers on the road. Gaitan also told Zavala "if you have to go in, then you have to go in." Zavala indicated that he did not understand why he would have to "go in," to which Gaitan responded, "You are driving under the influence, man." Gaitan then explained to Zavala that another officer was on the way to give him the "full test," and "if you pass the test, you pass the test, okay." Next, Gaitan asked Zavala if he had anything in his pockets, such as any knives. Gaitan also asked permission to search Zavala "real quick." Although Zavala's answer is inaudible, Zavala appeared to give consent to search. Gaitan

then conducted a brief pat-down search of Zavala, and told Zavala to place his hands on the patrol car. Zavala complied. Finally, Gaitan told Zavala, "Hang tight, right there, man. Give me one second. … Hang out right there."

In arguing that he was in custody when he exited his car, Zavala focuses on Gaitan's remarks, asserting that they were enough to make Zavala feel that his freedom of movement was restricted to the degree associated with a formal arrest. Although Gaitan communicated to Zavala that he believed Zavala was driving while intoxicated, Gaitan also made clear to Zavala that this belief would be confirmed or denied by another officer who would perform additional field sobriety testing. In other words, Gaitan clearly communicated to Zavala that he was still being investigated for driving while intoxicated. As additional support for his argument that he was in custody, Zavala emphasizes that Gaitan conducted a pat-down search and directed him to place his hands on the patrol car. However, we conclude that the pat-down search and the placement of Zavala's hands on the patrol car did not escalate the temporary investigative detention to a custodial detention. These actions were minimally intrusive and were done to safeguard the officers at the scene and to ensure Zavala's presence until the task force officer arrived.

We now examine all of the objective circumstances to determine whether Zavala's temporary investigative detention escalated to the functional equivalent of a formal arrest. At the relevant time, only two officers were on the scene and neither of them displayed any force. In fact, only one of the officers on the scene, Gaitan, had any interaction with Zavala. Additionally, Zavala was never handcuffed. The duration of the detention was not excessive. The investigation, which was relatively efficient, was conducted at the location of the original traffic stop. Zavala was not transported to another location. Gaitan told Zavala that another officer was coming to the scene to conduct additional field sobriety tests, and indicated that if he passed these tests he would be allowed to go. Thus, Gaitan informed Zavala that the detention was only temporary and

investigatory in nature. Based on all of the objective circumstances, we conclude that a reasonable person in Zavala's situation would not have believed that his freedom of movement was restricted to the degree associated with a formal arrest.

We conclude that the objective circumstances failed to show that Zavala was restrained to the degree associated with a formal arrest. Because Zavala failed to meet his burden to prove that he was in custody at the time he made his statements to Gaitan, the trial court did not err in denying Zavala's motions to suppress. The judgment of the trial court is therefore affirmed.

Karen Angelini, Justice

Do not publish