**Alan Joe ABERNATHY, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 04-96-00593-CR.

Court of Appeals of Texas,
San Antonio.

Jan. 30, 1998.

Stephanie L. Stevens, Edgar Smith, Center for Legal and Social Justice, Student Atty., San Antonio, for Appellant.

Daniel Thornberry, Asst. Crim. Dist. Atty., San Antonio, for Appellee.

Before LÓPEZ and DUNCAN, JJ., and CHARLES F. CAMPBELL, Former Judge.[1]

## OPINION

CHARLES F. CAMPBELL, Former Judge (Assigned).

Appellant was convicted by a jury of the offense of driving while intoxicated. The jury assessed his punishment at 180 days in the county jail and a fine of $1,500. In this appeal, appellant raises three points of error, claiming that the trial court erred in admitting extrajudicial statements of appellant into evidence, in violation of both the federal and state constitutions, and in violation of Texas statutory law. We will affirm.

Because all three of Appellant's points of error challenge his extrajudicial statements, a brief rendition of the facts is necessary. Viewed in the light most favorable to the trial court's overruling of Appellant's motion to suppress, the record reflects that on July 19, 1995 Appellant was stopped by San Antonio Officer Charles Marcus for speeding. After getting Appellant stopped, Marcus approached the vehicle and, upon Appellant opening his window, smelled a moderate odor of intoxicants. Marcus noticed that Appellant's eyes were glassy. He asked Appellant to get out of the vehicle, and asked him if he had had anything to drink. Appellant responded that he had had a few drinks. Marcus then asked Appellant to perform a series of three field sobriety tests. After Appellant performed the field sobriety tests, Marcus asked him how much he had had to drink. Appellant responded that he had consumed four drinks. Thereafter, Marcus placed Appellant under arrest for driving while intoxicated.

In point of error one, Appellant challenges the admission into evidence by the trial court of the two extrajudicial statements made by Appellant to Officer Marcus previously mentioned, claiming that these statements were obtained in violation of the Fifth and Fourteenth Amendments to the United States Constitution. Appellant claims that he was in custody at the time the statements were made and that no *Miranda*[2] warnings were given to him by Marcus prior to the statements being made, and therefore, the statements were not admissible at his trial. In his brief, Appellant's argument focuses on the issue of whether Appellant was in custody at the time the statements were given, or was being temporarily detained by Marcus for investigation.

Additionally, in point of error three, Appellant avers that the two statements made by Appellant were taken in violation of TEX. CODE CRIM. PROC. art. 38.22 § 3(a) (Vernon Supp.1998).[3] Since a threshold issue in point of error three is whether Appellant was in custody at the time the statements were made, our disposition of point one will necessarily be dispositive of point three, since the requirements of section 3(a) are dependent upon whether the statements were a product of *custodial interrogation*. If the statements were not in response to custodial interrogation, then section 3(a) simply is not applicable in this case. *See Rodriguez v. State*, 939 S.W.2d 211, 215 (Tex.App.—Austin 1997, no pet.).

## Standard of Review

"[A]s a general rule, the appellate courts, ..., should afford almost total deference to a trial court's determination of the historical facts that the record supports especially when the trial court's factfindings are based on an evaluation of credibility and demeanor." *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997). "The appellate courts, ..., should afford the same amount of deference to trial court's rulings on 'application of law to facts questions,' also known as 'mixed questions of law and fact,' if the reso-

---

1. Assigned to this case by the Chief Justice of the Supreme Court of Texas.

2. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

3. In pertinent part, section 3(a) provides: "No oral ... statement of an accused made as a result of custodial interrogation shall be admissible against the accused in a criminal proceeding unless: (1) an electronic recording ... is made of the statement." *Id.*

lution of those ultimate questions turns on an evaluation of credibility and demeanor. The appellate courts may review *de novo* 'mixed questions of law and fact' not falling within this category." *Id.* (citations omitted).

## Applicable Law

■ In determining whether an individual was in custody,[4] a court must examine all of the circumstances surrounding the interrogation, but the ultimate inquiry is simply whether there was a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest. *California v. Beheler*, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275 (1983) (per curiam). The United States Supreme Court has made clear in recent jurisprudence that the initial determination of custody depends upon the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned. *Stansbury v. California*, 511 U.S. 318, 323, 114 S.Ct. 1526, 1529, 128 L.Ed.2d 293 (1994) (per curiam).

■ In determining the objective nature of the interrogation, the Supreme Court has focused on what information has been communicated by the detaining officer to the suspect. *See id.* In *Berkemer v. McCarty*, the Supreme Court dealt with the roadside questioning of a motorist detained in a traffic stop, much like the one in the case at bar.[5] That Court decided that the motorist was not in custody for purposes of *Miranda* even though the traffic officer "apparently decided as soon as [the motorist] stepped out of his car that [the motorist] would be taken into custody and charged with a traffic offense." *See Berkemer v. McCarty*, 468 U.S. 420, 442, 104 S.Ct. 3138, 3151, 82 L.Ed.2d 317 (1984). It is apparent, then, that the Supreme Court has decided that the prophylactic warnings

required by *Miranda* do not attach until the officer has objectively created a custodial environment and has communicated to the accused his intention to effectuate custody to the accused himself. *See id.* Indeed a police officer's subjective view that the individual under questioning is a suspect, if not disclosed by the officer to that suspect, does not bear upon the question whether the individual is in custody for purposes of *Miranda*. *See Stansbury*, 511 U.S. at 324, 114 S.Ct. at 1529–30. The Supreme Court has concluded that "an officer's views concerning the nature of an interrogation, or beliefs concerning the potential culpability of the individual being questioned, may be one among many factors that bear upon the assessment whether that individual was in custody, but only if the officer's views or beliefs were somehow manifested to the individual under interrogation and would have affected how a reasonable person in that position would perceive his or her freedom to leave." *Id.* at 325, 114 S.Ct. at 1530; *cf. Rodriguez*, 939 S.W.2d at 216.

## Application of Law to Facts

■ Viewed in a light most favorable to the trial court's overruling of Appellant's motion to suppress, the record shows that, as in *Berkemer*, Officer Marcus in the instant case stopped Appellant initially for a traffic violation, speeding. Upon approaching Appellant's vehicle, Marcus smelled the odor of intoxicants, noticed Appellant's glassy eyes and suspected that Appellant had been drinking. Marcus asked Appellant if he had been drinking and Appellant replied in the affirmative. Marcus then had Appellant perform field sobriety tests. After the tests were completed, Marcus asked Appellant how many drinks he had consumed, and Appellant replied that he had consumed four drinks. Subsequently, Marcus placed Appellant un-

---

4. The Supreme Court has delineated a distinction between an arrest and an investigative detention, finding that an officer may, based on reasonable suspicion amounting to less than probable cause, detain a suspect briefly and may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions. The nonthreatening character of these detentions explains the absence of any application of the dictates of *Miranda* to these *Terry*

type stops. *See Berkemer v. McCarty*, 468 U.S. 420, 439–40, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317 (1984); *see also Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

5. Additionally, as in the case at bar, the officer in *Berkemer v. McCarty* administered field sobriety tests to the detained suspect before effectuating a formal arrest.

der arrest for the offense of driving while intoxicated.

The facts in this case are virtually indistinguishable from those in *Berkemer*, with the possible exception being Marcus's question regarding how much Appellant had consumed after initially inquiring whether he had consumed alcoholic beverages. But at no time during the asking of these two questions had Marcus's investigation proceeded beyond the investigatory stage. Although Marcus may have formed a subjective initial opinion that Appellant was intoxicated at the time he asked one or both of these questions, as emphasized in Appellant's brief, there had been no conveyance of this suspicion from Marcus to Appellant, and viewed from the standpoint of Appellant, the only official action taken by Marcus, at least until the formal arrest, had been Marcus's investigative questioning and the administering of the field sobriety test. Ergo all the measures employed by Marcus until the time of the arrest were in pursuance of a temporary investigation to determine whether or not Appellant was driving a motor vehicle while intoxicated. There was no coercive atmosphere of custodial interrogation as contemplated by *Miranda* and its progeny. No violations of the Fifth and Fourteenth Amendments have been shown, as Appellant simply was not subjected to custodial interrogation. *Accord Pennsylvania v. Bruder*, 488 U.S. 9, 109 S.Ct. 205, 102 L.Ed.2d 172 (1988) (per curiam). Point of error one is overruled, and ipso facto, point of error three is overruled.

In point of error two, Appellant makes the same claims as made in point one above, except he challenges the admissibility of the two statements under Texas Constitution, article I, sections 13 and 19, the so-called "due course of law" clauses. Although not mentioned in his brief, we are assuming that Appellant also meant to invoke article I, section 10 as well, since it is the functional equivalent of the Fifth Amendment to the United States Constitution, and it provides that an accused "shall not be compelled to give evidence against himself." The only case cited by Appellant as authority is *Sanchez v. State*, 707 S.W.2d 575 (Tex.Crim.App. 1986). The holding in *Sanchez* however is again predicated upon the threshold question of when a formal arrest has occurred.

In *Sanchez*, the State at trial attempted to use the defendant's post-arrest silence against him as a form of impeachment. The Court of Criminal Appeals held that once the state has restrained the liberty of the accused to the degree that an arrest has occurred, the privilege against self-incrimination attaches to its fullest extent. *See Sanchez*, 707 S.W.2d at 579–80. Since this right against self-incrimination arises upon arrest, the defendant's post-arrest silence is presumed to be a part of that right. *Id.* at 580. That Court went on to hold that pursuant to article I, section 10 of the Texas Constitution, "when the defendant is arrested, he has the right to remain silent and the right not to have that silence used against him, even for impeachment purposes, regardless of when he is later advised of those rights." *Id.*

The holding in *Sanchez* is inapplicable to the case at bar for two reasons. First, the holding in *Sanchez* concerned itself with impeachment of the defendant at trial with the use of his post-arrest silence. Nowhere in *Sanchez* does the Court concern itself with the issue of when a person is in custody as opposed to temporary detention. Secondly, the Court was confronted with a fact situation in which the defendant had unquestionably been placed under formal arrest and was in custody. There was no claim by the State that the defendant was temporarily detained rather than under arrest and in custody, as the State argues in the case at bar. Thus the whole thrust of the Court's holding in *Sanchez* assumes that a *custodial arrest* had occurred. Since we have found in our discussion of point of error one that an arrest had not occurred, the holding in *Sanchez* is inapplicable to the case at bar. Appellant's second point of error is overruled.

The judgment of the trial court is affirmed.