**Affirmed and Memorandum Opinion filed September 25, 2012.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-11-00434-CR

---

**TIFFANY NICOLE PETTIS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the County Court at Law No. 2**
**Fort Bend County, Texas**
**Trial Court Cause No. 08-CCR-138866**

---

## MEMORANDUM OPINION

In this appeal from a conviction for driving while intoxicated, appellant Tiffany Nicole Pettis asserts the trial court erred in denying her motions to suppress, in failing to

make findings of fact and conclusions of law, and in failing to include an instruction regarding the legality of the traffic stop in the jury charge. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A police officer conducted a traffic stop of appellant's vehicle, resulting in appellant's warrantless arrest and the subsequent charge against appellant for driving while intoxicated. Appellant pleaded "not guilty" to the charged offense.

Before trial, appellant filed a "Motion to Suppress Test, Videotape, Statements" (hereinafter "First Motion to Suppress"), asserting that the stop was not supported by reasonable suspicion and that any and all evidence and statements following the allegedly illegal detention were not admissible. Appellant filed a second pretrial motion to suppress one of the field-sobriety tests (hereinafter "Second Motion to Suppress"). Appellant later filed a third motion to suppress entitled "Motion to Suppress Audio Portions of the Videotape" (hereinafter "Third Motion to Suppress"), asserting that any statements she made on the scene, as reflected in a video, were inadmissible as the result of custodial interrogation in which she was not informed of her *Miranda* rights. An associate judge conducted a suppression hearing on appellant's first two motions, and three months later, the trial judge conducted another hearing on the Third Motion to Suppress.

According to the records from the two suppression hearings, an officer testified that he was in a patrol unit, monitoring the traffic for speeding and intoxicated drivers. He observed a vehicle, driven by appellant, traveling toward him, weaving outside of its lane. The officer noted that two of the vehicle's tires veered outside the lane. As the vehicle passed the officer, the officer followed the vehicle and observed the vehicle weave within its own lane. As the officer was watching, the vehicle hit the curb of the roadway with its right tires, bounced off the curb, and continued traveling, weaving within its own lane again. According to the officer, another vehicle traveling beside

2

appellant's vehicle slowed twice: once to avoid appellant's vehicle from weaving and entering the adjacent lane and again when appellant's vehicle hit the curb.

The officer also saw that appellant's vehicle had a defective taillight. Although it still partially emitted a red light, it appeared as if the lamp covering were "shattered" and missing a piece. The officer believed the defective taillight was a violation of the Texas Transportation Code. As reflected in the video, appellant admitted that her taillight was broken and not working.

The officer initiated a traffic stop of appellant's vehicle based on the officer's observation of the vehicle weaving inside and outside of its lane, striking the curb, and operating with a defective taillight. The officer approached the vehicle and identified appellant, the driver, by her driver's license. At that time, he detected the strong odor of alcohol emitting from the interior of the vehicle; appellant admitted she had been drinking and had consumed three or four beers that evening.

Appellant exited the vehicle at the officer's request, and the officer returned to his vehicle to notify dispatch that he planned to administer standardized field-sobriety tests to appellant. The officer approached appellant again and asked her how much alcohol she had consumed; appellant stated that she consumed four draft beers at a nearby bar and restaurant. In response to the officer's questions, appellant stated that she had last eaten a salad at 1:00 p.m. that day and started consuming the beers at 8:30 p.m. or 9:00 p.m. At that time, it was near midnight. While the officer spoke with appellant, he detected the odor of alcohol on her breath and observed that her eyes were glassy.

The officer administered field-sobriety tests to appellant. She exhibited six of eight clues for intoxication in a walk-and-turn test and four out of four clues for intoxication in a one-leg-stand test.[1] Following these field-sobriety tests, the officer did not believe that appellant was being truthful about how many alcoholic beverages she had consumed. The officer continued his investigation and questioned appellant about her

_____

[1] The officer conducted another field-sobriety test that the trial court later ruled was inadmissible.

3

tolerance levels with four beers on an empty stomach. Appellant responded to the officer's questions saying, among, other things, "I obviously didn't realize I was this intoxicated." The officer then completed his investigation, handcuffed appellant, and placed her under arrest for driving while intoxicated, leading to the eventual charge against appellant.

Following the hearing on appellant's first two motions, the associate judge found that there was reasonable suspicion to stop appellant's vehicle. The associate judge denied appellant's First Motion to Suppress and granted appellant's Second Motion to Suppress evidence of one of the field-sobriety tests; in response to the ruling, the video was redacted to remove reference to that particular field sobriety test. On February 3, 2011, appellant filed a written request for findings of fact and conclusions of law as relevant to the associate judge's denial of appellant's First Motion to Suppress. Appellant also filed a notice of de novo appeal of the associate judge's report[2] and objected to the associate judge's findings of reasonable suspicion to stop appellant's vehicle and probable cause to arrest appellant for driving while intoxicated.

The trial court, considering appellant's Third Motion to Suppress, conducted a hearing outside of the jury's presence. The trial court considered the circumstances surrounding appellant's statement, as reflected in the video, "I obviously didn't realize I was this intoxicated." The trial court denied the motion and made the following statements in open court:

- [Appellant] voluntarily answered questions [and] did not ask for counsel; however, she was not read her *Miranda* rights.

- The Court feels that this was not a custodial detention.

---

[2] *See* Tex. Gov't Code Ann. § 54.1018(a),(e), *repealed by* Acts of 2011, 82nd Leg., 1st C.S., ch.3 (H.B. 79), § 6.11(9), 2011 Tex. Sess. Law Serv. 153 (effective Jan. 1, 2012) (providing for the appeal of and de novo review of an associate judge's report). Although this statute is no longer in effect and was not in effect at the time of submission on appeal, the statute remained in effect at the time of the ruling and at trial.

4

- There is no evidence [appellant] thought that she was under arrest or not free to leave.
- [T]he officer was still conducting his investigation.

At the same hearing, appellant asked the trial court to re-consider whether the arresting officer had reasonable suspicion to stop appellant in an appeal de novo from the associate judge's denial of appellant's First Motion to Suppress. The trial court ultimately ruled that it would carry the suppression issue with the case.

The case proceeded to trial. As reflected in the record, when the State rested its case in chief, appellant moved for a directed verdict and, at the same time, re-urged her First Motion to Suppress; both motions encompassed appellant's arguments that the officer lacked reasonable suspicion to initiate a traffic stop of appellant's vehicle. The trial court denied the motion for directed verdict; the trial court did not expressly rule on appellant's First Motion to Suppress, as re-urged. The jury found appellant guilty of the charged offense. The trial court sentenced appellant to 180 days' confinement, probated for twelve months. Appellant now appeals, raising four issues.

## ISSUES AND ANALYSIS

### *Did the trial court err in denying appellant's motions to suppress?*

Appellant contends the trial court erred in denying her motions to suppress. In her second issue, appellant asserts that the officer lacked reasonable suspicion to temporarily stop and detain her such that all evidence following the allegedly illegal stop should have been suppressed, as raised in her First Motion to Suppress. In her third issue, appellant asserts that she was in custody at the time the officer elicited her statement, "I obviously didn't know I was this intoxicated," and that this statement was inadmissible, as raised in her Third Motion to Suppress, because the officer did not inform her of her *Miranda* rights during the custodial interrogation.

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). At a

5

suppression hearing, the trial court is the sole finder of fact and is free to believe or disbelieve any or all of the evidence presented. *Weide v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007). We give almost total deference to the trial court's determination of historical facts that depend on credibility and demeanor, but we review de novo the trial court's application of the law to the facts as resolution of those ultimate questions does not turn on evaluation of credibility and demeanor. *Guzman*, 955 S.W.2d at 89. When, as in this case, there are no written findings of fact in the record, we uphold the trial court's ruling on any theory of law applicable to the case and presume the trial court made implicit findings of fact in support of its ruling so long as those findings are supported by the record. *State v. Ross*, 32 S.W.3d 853, 855–56 (Tex. Crim. App. 2000). We view a trial court's ruling on a motion to suppress in the light most favorable to the trial court's decision. *Weide*, 214 S.W.3d at 24. If supported by the record, a trial court's ruling on a motion to suppress will not be overturned. *Mount v. State*, 217 S.W.3d 716, 724 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

### The officer's stop and detention of appellant's vehicle

Appellant claims there was no reasonable suspicion to justify the officer's initial traffic stop of appellant's vehicle and that the trial court should have granted her First Motion to Suppress. A motion to suppress is nothing more than a specialized objection to the admissibility of the evidence. *Galitz v. State*, 617 S.W.2d 949, 952 n.10 (Tex. Crim. App. 1981). An objection must be timely made with sufficient specificity to apprise the trial court of the complaint and basis for the objection and the party making the objection must obtain a ruling on that objection. *See* Tex. R. App. P. 33.1(a)(1)(A); *Garza v. State*, 126 S.W.3d 79, 81–82 (Tex. Crim. App. 2004). Generally, when a trial court overrules a pretrial motion to suppress evidence, a defendant need not subsequently object to the admission of the same evidence at trial in order to preserve error. *Garza*, 126 S.W.3d at 84. In a jury trial, the timing of an objection and a ruling is important because if the objection is not made early enough and a ruling is not obtained, the jury might hear

6

evidence that it might never have heard at all. *Id.* at 83–84 (involving a motion to suppress that was carried with the trial, re-urged at a later point during the trial, and denied, which preserved error). If the trial court does not hold a pretrial hearing on a motion to suppress evidence or rule on the motion, the defendant must timely object to that evidence at trial to preserve error; the mere filing of the suppression motion is not sufficient. *Calloway v. State*, 743 S.W.2d 645, 649 (Tex. Crim. App. 1988).

The Texas Court of Criminal Appeals, in *Garza v. State*, carved out a narrow exception to this rule, holding that a defendant preserves error when specific pre-trial comments made by the trial judge essentially direct the defendant to wait until all evidence is presented before the trial judge rules. *See* 126 S.W.3d at 84–85. In *Garza*, it was clear from the trial judge's comments in the record that any additional attempt to object or obtain a ruling on the motion to suppress during the officers' testimony would have been futile. *See id.* at 84. This holding expressly was not intended to apply to situations outside of the "special circumstances" of that case. *Id.* at 85. Those "special circumstances" are not applicable to this case. *See id.*

As detailed above, although an associate judge denied the First Motion to Suppress, on appeal de novo of the associate judge's ruling, the trial court carried the motion with the trial. During the course of trial, the arresting officer testified to seeing appellant's vehicle, with a defective taillight, weaving both inside and outside of its lane before hitting a curb, bouncing off the curb, and causing another vehicle to slow down. The officer testified that he initiated the traffic stop based on the vehicle's movements and defective taillight. When this evidence was introduced, appellant did not object. Likewise, appellant did not assert any objection on these grounds to evidence that flowed from this stop. An objection or motion to suppress is not timely if it is made after the evidence or testimony relating to it is admitted without objection. *See Marini v. State*, 593 S.W.2d 709, 714 (Tex. Crim. [Panel Op.] App. 1980). Because appellant did not timely voice any complaint to the introduction of the evidence at trial relating to the

legality of the stop or the evidence stemming from the stop, she did not preserve error on the First Motion to Suppress.[3] *See Nelson v. State*, 626 S.W.2d 535, 536 (Tex. Crim. App. [Panel Op.] 1981) (concluding that defendant did not timely obtain a ruling on motion to suppress until after evidence was admitted and failed to preserve error for review); *Sims v. State*, 833 S.W.2d 281, 285 (Tex. App.—Houston [14th Dist.] 1992, pet. ref'd).

Nevertheless, even presuming that appellant had preserved error, the officer was justified in stopping appellant based on reasonable suspicion that appellant had violated section 545.060 of the Texas Transportation Code. *See Cook v. State*, 63 S.W.3d 924, 927–28 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd); Tex. Transp. Code Ann. § 545.060 (West 2011). Section 545.060 requires an operator on a roadway divided into two or more clearly marked lanes for traffic to (1) drive, as nearly as practical, entirely within a single lane, and (2) not move from the lane unless that movement can be made safely. Tex. Transp. Code Ann. § 545.060. Although the officer did not expressly testify that appellant's movements were unsafe, the officer testified that he observed appellant's vehicle weaving multiple times within her own lane and outside of her lane, bouncing off the curb once, and causing another vehicle to slow. As described, such constant weaving is sufficiently unsafe; the officer was not required to wait until appellant had placed herself or others in immediate peril as a result of her erratic driving. *See Cook*, 63 S.W.3d at 28 (distinguishing that constant weaving, even without other vehicles around, was sufficiently unsafe amounting to a violation of section 545.060). Given the totality of the circumstances, the officer's observations and testimony are sufficient to demonstrate that appellant was not moving from one lane to another safely, and therefore the officer was justified in stopping appellant based on a reasonable suspicion that she was in violation of the Texas Transportation Code. *See id.* The trial court would not

---

[3] Based on our disposition of the second issue, we need not address the first issue.

have erred in overruling the motion to suppress had appellant properly preserved this issue for appellate review. *See id.* We overrule appellant's second issue.

### The officer's alleged custodial interrogation of appellant without informing appellant of her *Miranda* rights

Appellant asserts that the trial court should have granted her Third Motion to Suppress the following statements she made to the officer after performing the field sobriety tests, as reflected in the video:

> [Officer]: Now you want to tell me how much you really had to drink?
>
> [Appellant]: I had 4 beers and like I said . . . I had a salad earlier.
>
> [Officer]: Is it because you're on an empty stomach, you think?
>
> [Appellant]: If a salad is an empty stomach, then yeah.
>
> [Officer]: No, I'm asking, you know how much alcohol you can take for your body weight and how much you consume on a normal basis so you know how much your body can take.
>
> [Appellant]: Right, I mean I understand that and I know that I've only had 4 beers and I didn't realize I was obviously this intoxicated, but, no, I did not mean to cut that car off.

Following these statements, the officer told appellant that she did not pass the field-sobriety tests and that he was placing her in custody for driving while intoxicated. According to appellant, these statements were made in response to the officer's interrogation of her while she was in custody and without first informing her of her *Miranda* rights or her statutory rights under article 38.22 of the Texas Code of Criminal Procedure. *See* Tex. Code Crim. Proc. Ann. art. 38.22 §3(a) (West 2005); *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d (1966).

The record reflects that following the suppression hearing on the Third Motion to Suppress, appellant made a bill of exceptions for purposes of the record. Appellant testified that, at the time she made the statements on the scene, she did not believe she was free to leave and believed she was in custody. Appellant stated that during the

9

questioning, her movement was not restricted. According to appellant, the officer did not tell her she was under arrest until the officer placed handcuffs on her, and she did not tell the officer that she was being questioned without an attorney being present. Although appellant re-urged this motion to suppress, the trial court denied it.

The State may not use exculpatory or inculpatory statements stemming from the custodial interrogation of an accused unless procedural safeguards were effectively used to secure the accused's privilege against self-incrimination. *See Miranda*, 384 U.S. at 444, 86 S. Ct. at 1602. The Texas Legislature has codified these procedural safeguards in the Texas Code of Criminal Procedure. *See* Tex. Code Crim. Proc. Ann. art. 38.22. Specifically, article 38.22, section 3 prohibits the admission of an accused's oral or sign language statement made as a result of custodial interrogation unless, among other prerequisites, the *Miranda* warnings and one additional warning prescribed in article 38.22 were given, and the accused knowingly, intelligently, and voluntarily waived any rights set out in the warnings. *See id.* § 3(a). It is undisputed that the officer did not inform appellant of these rights before appellant made those statements; therefore, we must decide whether the statements were made as a result of custodial interrogation.

"Custodial interrogation" means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444, 86 S. Ct. at 1602. A person is in custody if, under the circumstances, a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest. *Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996). The "reasonable person" standard presupposes an innocent person. *Id.* Moreover, the subjective intent of law enforcement officials to arrest is irrelevant unless that intent is somehow communicated or otherwise manifested to the suspect. *Id.* The Court of Criminal Appeals has recognized four factors relevant to determining custody:

(1) probable cause to arrest,

10

(2) subjective intent of the police,

(3) focus of the investigation, and

(4) subjective belief of the defendant.

*Id.* However, under *Stansbury v. California*, 511 U.S. 318, 321–24, 114 S. Ct. 1526, 1528–30, 128 L. Ed. 2d 293, 298–99 (1994), factors (2) and (4) have become irrelevant except to the extent that they may be manifested in the words or actions of law enforcement officials. *See Dowthitt*, 931 S.W.2d at 254. The custody determination must be made on an ad hoc basis, after considering all of the objective circumstances. *Id.* at 255. The mere fact that an interrogation begins as noncustodial does not prevent custody from arising later; a consensual inquiry can escalate into custodial interrogation. *Id.*

The Court of Criminal Appeals has outlined at least four general situations which may constitute custody:

(1) when the suspect is physically deprived of his freedom of action in any significant way,

(2) when a law enforcement officer tells the suspect that he cannot leave,

(3) when law enforcement officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted, and

(4) when there is probable cause to arrest and law enforcement officers do not tell the suspect that he is free to leave.

*Id.* Concerning the first three situations, *Stansbury* indicates that the restriction upon freedom of movement must amount to the degree associated with an arrest as opposed to an investigative detention. *Dowthitt*, 931 S.W.2d at 255. Concerning the fourth situation, *Stansbury* dictates that the officers' knowledge of probable cause be manifested to the suspect. *Dowthitt*, 931 S.W.2d at 255. Such manifestation can occur if

11

information substantiating probable cause is related by the suspect to the officers or if such information is related by the officers. *Id.* Furthermore, situation (4) does not automatically establish custody; rather, custody is established if the manifestation of probable cause, combined with other circumstances, would lead a reasonable person to believe that he is under restraint to the degree associated with an arrest. *Id.* The length of time spent interrogating the suspect is another factor to consider. *Id.* at 256.

A temporary investigative detention is distinguishable from being in custody. *See Hernandez v. State*, 107 S.W.3d 41, 47 (Tex. App.—San Antonio 2003, pet. ref'd). An officer may detain a motorist briefly to investigate reasonable suspicion that a person has committed, is committing, or is about to commit a crime, and the officer may ask a moderate number of questions to gather information to confirm or dispel the officer's suspicions. *See Berkemer v. McCarty*, 468 U.S. 420, 439, 104 S. Ct. 3138, 82 L. Ed. 2d 317 (1984).

Appellant asserts that the officer had developed probable cause to arrest as early as the first field-sobriety test he administered, and that this probable cause amounted to appellant being in custody. An officer's roadside questioning of a motorist detained in a traffic stop and asking the motorist to perform field-sobriety tests does not amount to custody for purposes of *Miranda* until the officer has created a custodial environment and communicated to the accused an intention to effectuate custody. *See Berkemer*, 468 U.S. at 442, 104 S. Ct. 3138; *Abernathy v. State*, 963 S.W.2d 822, 824–25 (Tex. App.—San Antonio 1998, pet. ref'd) (involving an officer who asked how much alcohol an accused had consumed and administered field-sobriety tests to the accused, who was not in custody for *Miranda* purposes). The officer testified that he did not believe that appellant was being truthful about the amount of alcohol she had consumed. Although the officer may have formed an initial subjective opinion that appellant was intoxicated at the time she made the statements, the record does not reflect that the officer conveyed this suspicion to appellant until after appellant made the complained-of statements and the

officer manifested his intent to place appellant in custody for driving while intoxicated. *See Hutto v. State*, 977 S.W.2d 855, 858 (Tex. App.—Houston [14th Dist.] 1998, no pet.) (concluding that officer's belief that an accused was drunk was not manifested to the accused until after the field-sobriety tests were administered and officer placed the accused under arrest); *Abernathy*, 963 S.W.2d at 825. The mere existence of probable cause is not sufficient to trigger *Miranda* protections; other circumstances must exist for a reasonable person to believe that she is under the restraint to the degree associated with an arrest. *See Dowthitt*, 931 S.W.2d at 255. Even viewing the facts from appellant's standpoint, as based on the record, the only official action taken by the officer until the formal arrest was the investigative questioning and administering of the field-sobriety tests, neither of which, without more, amounts to custodial interrogation. *See Abernathy*, 963 S.W.2d at 825. The record reflects that all of the measures employed by the officer until the time of formal arrest were in the pursuit of a temporary investigation to confirm or dispel his suspicions as to whether appellant was operating a motor vehicle while intoxicated. *See Campbell v. State*, 325 S.W.3d 223, 235 (Tex. App.—Fort Worth 2010, no pet.); *Abernathy*, 963 S.W.2d at 824–25.

Appellant asserts that she was never told she was free to leave and that a reasonable person would not have felt free to leave. The officer questioned appellant along the side of a public road, where appellant would have expected to have proceeded along her way had she passed the field-sobriety tests. *See Hernandez v. State*, 107 S.W.3d 41, 48 (Tex. App.—San Antonio 2003, pet. ref'd). Contrary to appellant's claims, the record reflects no coercive atmosphere or custodial interrogation, as contemplated by *Miranda*. *See Lewis v. State*, 72 S.W.3d 704, 713 (Tex. App.—Fort Worth 2002, pet. ref'd); *Abernathy*, 963 S.W.2d at 825. Regarding the time period during which the officer asked appellant about her alcohol consumption, the record does not contain evidence of any circumstances that would indicate to a reasonable person that she was under restraint to the degree associated with an arrest. *Cf. Alford v. State*, 22 S.W.3d 669, 672 (Tex. App.—Fort Worth 2000, pet. ref'd) (reversing a conviction for

13

driving while intoxicated when an accused's statement about consuming six beers was made after the accused was handcuffed and placed on the ground because the statements were inadmissible in the absence of *Miranda* warnings).

Even under a de novo review and without deferring to the trial court's ruling, under the totality of the circumstances appellant was not in custody for *Miranda* purposes until the officer formally arrested her. *See Hutto*, 977 S.W.2d at 858. Because appellant was not yet in custody when she made the statements, the trial court did not err in denying her motion to suppress. *See id.* We overrule appellant's third issue.

### *Did the trial court err in failing to charge the jury with an instruction pursuant to article 38.23 of the Texas Code of Criminal Procedure?*

In her fourth issue, appellant asserts that the trial court's instruction under article 38.23 of the Texas Code of Criminal Procedure, and in response to appellant's request for an article 38.23 instruction, was not proper because it did not provide the jury with enough information on the specific factual determination as to whether the traffic stop was valid. Appellant initially requested an article 38.23 instruction limiting the jury's consideration of evidence resulting from the traffic stop if the jury found from the evidence that appellant "did not commit a traffic violation immediately preceding this stop and detention by the officer." The parties discussed the proposed language, and the trial court recessed to allow the parties to come to an agreement. After the recess, the following exchange occurred, in relevant part:

> [Trial Counsel]: Back to the 38.23, the State wants to put in the first sentence. The State wants to put in "You are instructed that under our law no evidence obtained or derived by an officer or other person as a result of an unlawful stop and detention shall be admissible in evidence against such accused." The only thing I would like to add is that I want to put in "You are instructed that under our law, no evidence obtained or derived by any officer or other person as a result of an unlawful stop and detention or [in] violation of any other law shall be admissible in evidence against such accused." Then put the part in from 38.23.

14

[Trial Court]:  Middle paragraph?

[Trial Counsel]: Yes.

[Trial Court]:  I think you get that from the first sentence.

[Trial Counsel]:  That only limits us to the stop issue really.  We want to be able to argue they shouldn't consider—

[Trial Court]:  unlawful stop and detention.

[Trial Counsel]: But the Miranda—they can say that's not part of the stop and detention.

[Trial Court]:  So where's the language you want in?

[Prosecutor]:  Nowhere.

[Trial Court]:  So give me the language again that you want in.

[Trial Counsel]:  I just want to add the phrase "or in violation of any other law."

. . .

[Trial Court]:  Mr. Doggett, come up with another way to get to Miranda.

[Trial Counsel]:  Well, the only other way is to put in Miranda warnings or something specifically.

. . .

[Trial Court]:  I think shorter is better.  We are going to leave that first sentence.  The first sentence then this paragraph two.

[Trial Counsel]:  Yes, sir.

[Trial Court]:  Okay.  That's my order.

    (Recess)

[Trial Court]:  Any objection to the charge as presented?

[Prosecutor]:  Not from the State.

[Trial Counsel]:  Not from the Defendant; no further objections.

15

The trial court included the following instruction in the charge:

> You are instructed that under our law no evidence obtained or derived by an officer or other person as a result of an unlawful stop and detention shall be admissible in evidence against such an accused. In any case where the legal evidence raises an issue hereunder, you are instructed that if you believe, or have a reasonable doubt, that the evidence was obtained in violation of the law, then and in such event, you shall disregard any such evidence so obtained.

On appeal, appellant asserts that "the trial court should have instructed the jury that if it found Appellant was not weaving within her lane, Appellant's weaving was not unsafe, Appellant did not hit the curb, and Appellant was not speeding, then it should disregard any evidence obtained as a result of the stop." The State contends that appellant has waived review of this complaint because she did not raise it in the trial court and, instead, raises it for the first time on appeal.

A judge has the *sua sponte* duty to prepare a jury charge that accurately sets out the law applicable to the specific offense charged. *See Oursbourn v. State*, 259 S.W.3d 159, 179 (Tex. Crim. App. 2008); *see* Tex. Code. Crim. Proc. Ann. art. 36.14 (West 2007). To be entitled to a jury instruction under article 38.23, there must be a genuine dispute about a material fact that is essential to deciding the lawfulness of the challenged conduct in obtaining evidence. *See Madden v. State*, 242 S.W.3d 504, 510 (Tex. Crim. App. 2007). Even if we presume without deciding that appellant was entitled to an article 38.23 instruction, there is no basis to grant relief.

Appellant never presented her proposed instruction to the trial court, and failed to object to the lack of one. Presuming for the sake of argument that it was error for the trial court not to include this instruction, any error would be harmless. We review any potential error in the charge for "egregious harm" under *Almanza*. *See id.*; *see also Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). In conducting an egregious-harm analysis, we consider the charge itself; the state of the evidence, including contested issues and the weight of the probative evidence; arguments of

16

counsel; and any other relevant information revealed by the record as a whole. *See Martin v. State*, 200 S.W.3d 635, 641–42 (Tex. Crim. App. 2006).

Although the jury charge did not specify the ways that the jury could have found the officer's stop to be unlawful, the jury charge did instruct that evidence stemming from an unlawful stop or detention was not admissible against appellant. Additionally, the trial court instructed that if the jury found beyond a reasonable doubt that the evidence was obtained in violation of the law, the evidence should be disregarded. Both parties spent considerable time on this very instruction in closing argument, with the State pointing to evidence supporting the reasons for the officer's stop and appellant challenging the officer's credibility of those facts. Reviewing the record as a whole, considering any harm in light of the entire jury charge, the state of the evidence, the argument of counsel, and any other relevant information, we conclude that even assuming the trial court erred in its failing to include the specific instruction that appellant seeks on appeal, appellant was not egregiously harmed. *See Hutch v. State*, 922 S.W.2d 166, 172–74 (Tex. Crim. App. 1996); *Martin v. State*, 200 S.W.3d 635, 642 (Tex. Crim. App. 2006); *Almanza*, 686 S.W.2d at 171. We overrule appellant's fourth issue.

The trial court's judgment is affirmed.


/s/     Kem Thompson Frost
        Justice



Panel consists of Justices Frost, Busby, and McCally.

Do Not Publish — TEX. R. APP. P. 47.2(b).

17