

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-12-00136-CR

Cheyenne **ESTRADA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No. 4, Bexar County, Texas
Trial Court No. 309111
Honorable Sarah Garrahan-Moulder, Judge Presiding

Opinion by:     Catherine Stone, Chief Justice

Sitting:     Catherine Stone, Chief Justice
Sandee Bryan Marion, Justice
Rebecca Simmons, Justice

Delivered and Filed:  December 28, 2012

AFFIRMED

Cheyenne Estrada pleaded nolo contendere to possession of marijuana and was placed on deferred adjudication community supervision.  On appeal, Estrada challenges the trial court's denial of her motion to suppress a statement in which she claimed ownership of the marijuana. Estrada contends her statement was admitted in violation of the Fifth and Fourteenth Amendments of the United States Constitution, Article 1 of the Texas Constitution, and Article 38.22 § 3(a)(2) of the Texas Code of Criminal Procedure because she was in custody and was not warned of her rights before being asked who owned the marijuana.   She also complains the

statement was erroneously admitted in violation of Article 38.22 § 3(a)(1) of the Texas Code of Criminal Procedure because it was not electronically recorded.

### BACKGROUND

Officer Frank Rodriguez and his partner, Officer J. Alvarado, stopped Estrada for failure to display a front license plate. When Officer Rodriguez approached the driver's side window of Estrada's vehicle, he immediately detected the odor of burnt marijuana. Estrada and her passenger were asked to exit the vehicle, and Officer Rodriguez conducted a search of the vehicle. Officer Rodriguez discovered a makeup bag containing three baggies of marijuana, a glass pipe, a grinder, rolling papers, a scale, a knife, and a box cutter. After finding these items, Officer Rodriguez asked Estrada and her passenger to whom the marijuana belonged, and Estrada confessed that the marijuana belonged to her. After her admission, Officer Rodriguez placed Estrada under arrest. No *Miranda*[1] warnings were administered prior to Estrada's arrest.

Estrada filed a pretrial motion to suppress her statement admitting ownership of the marijuana, claiming the statement was a product of custodial interrogation without proper warnings in violation of the state and federal constitutions and the Texas Code of Criminal Procedure. Officer Rodriguez was the sole witness at the suppression hearing, and he testified Estrada was arrested because, in addition to her statement, the makeup bag was found under her seat and within her reach, and because the vehicle was registered to her. Additionally, Officer Rodriguez stated Estrada was not free to leave during the vehicle search or after the marijuana was found. He testified, however, that this was never communicated to Estrada during the detention. The trial court denied Estrada's motion to suppress, concluding the statement was not the product of custodial interrogation because Estrada was merely detained, not arrested, prior to her statement.

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

## STANDARD OF REVIEW

We review the trial court's ruling on a motion to suppress under a bifurcated standard. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997) (en banc). We defer to the trial court's determinations on historical facts supported by the record, especially when they are based on credibility assessments, and mixed questions of law and fact that turn on credibility evaluations. *State v. Iduarte*, 268 S.W.3d 544, 548 (Tex. Crim. App. 2008); *Guzman*, 955 S.W.2d 85. We review de novo purely legal questions and mixed questions of law and fact not turning on credibility assessments. *Leza v. State*, 351 S.W.3d 344, 349 (Tex. Crim. App. 2011); *Carmouche*, 10 S.W.3d at 327. Viewing the evidence in the light most favorable to the trial court's ruling, the ruling will be upheld if it is supported by the record and correct under any theory of law applicable to the case. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000) (en banc).

## ADMISSIBILITY OF THE STATEMENT

Estrada contends her statement was admitted in violation of the Fifth and Fourteenth Amendments of the United States Constitution, Article 1 of the Texas Constitution, and Article 38.22 § 3(a)(2) of the Texas Code of Criminal Procedure because she was not warned of her right to remain silent before being asked who owned the marijuana. She also complains the statement was erroneously admitted in violation of Article 38.22 § 3(a)(1) because it was not electronically recorded. Because all of Estrada's claims turn on whether her statement was the result of custodial interrogation, we will review them together. *See Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996); *Abernathy v. State*, 963 S.W.2d 822, 823 (Tex. App.—San Antonio 1998, pet. ref'd).

### A. Overview of the Law

Every person has the right to be free from compelled self-incrimination. U.S. CONST. amend. V, XIV; TEX. CONST. art. I, § 10. In order for a statement elicited as a result of custodial interrogation to be admissible, an accused must first be warned of his constitutional and statutory rights. TEX. CODE CRIM. PROC. ANN. art. 38.22 § 3(a)(2); *Miranda v. Arizona*, 384 U.S. 436, 444 (1966); *Contreras v. State*, 312 S.W.3d 566, 582 (Tex. Crim. App. 2010). Additionally, Texas law requires oral statements made during custodial interrogation to be electronically recorded. TEX. CODE CRIM. PROC. ANN. art. 38.22 § 3(a)(1).

An individual is in custody if a reasonable person in his position would believe there has been a "'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (per curiam) (quoting *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977)); *State v. Ortiz*, No. PD-1181-11, 2012 WL 5348503, at *4 (Tex. Crim. App. Oct. 31, 2012). "The 'reasonable person' standard presupposes an *innocent* person." *Dowthitt*, 931 S.W.2d at 254 (citing *Florida v. Bostick*, 501 U.S. 429, 438 (1991)). To determine whether an individual is in custody, the United States Supreme Court has announced two essential inquiries: (1) "what were the circumstances surrounding the interrogation; and [(2)] given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave." *Thompson v. Keohane*, 516 U.S. 99, 112 (1995). The first inquiry is factual so we give almost total deference to the trial court's determination. *Id.*; *Guzman*, 955 S.W.2d at 89; *Garza v. State*, 34 S.W.3d 591, 593 (Tex. App.—San Antonio 2000, pet. ref'd). The second inquiry is a mixed question of law and fact that does not turn on an assessment of the witness's credibility and demeanor so we review it de novo. *Thompson*, 516 U.S. at 112–13, *Guzman*, 955 S.W.2d at 89; *Garza*, 34 S.W.3d at 593. A custody determination is to be made by looking only to the objective circumstances of the interaction, unless an officer

manifests his subjective intentions to the individual. *Stansbury v. California*, 511 U.S. 318, 323–25 (1994) (per curiam); *Dowthitt*, 931 S.W.2d at 254.

The Texas Court of Criminal Appeals has identified four situations that may result in a restriction of one's freedom sufficient to place the person in custody:

(1) when the suspect is physically deprived of his freedom of action in any significant way[;]

(2) when a law enforcement officer tells the suspect that he cannot leave[;]

(3) when law enforcement officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted[;] and

(4) when there is probable cause to arrest and law enforcement officers do not tell the suspect that he is free to leave.

*Dowthitt*, 931 S.W.2d at 255 (citing *Shiflet v. State*, 732 S.W.2d 622, 629 (Tex. Crim. App. 1985) (en banc)). The first three situations involve restricting one's freedom of movement to the degree associated with a formal arrest. *Id.* The fourth circumstance applies only if the officer manifests his knowledge of probable cause to the suspect, or vice versa. *Id.* However, even if knowledge of probable cause is manifested, the fourth prong may still be insufficient to create custody absent additional circumstances. *Id.* Therefore, the manifestation of probable cause cannot, by itself, establish custody or its equivalent. When making custody determinations, Texas courts have also considered whether: (1) the officer was conducting an investigation; (2) the suspect was handcuffed; (3) the officers used weapons to detain the suspect; (4) police outnumbered the individuals detained; (5) threatening language was used; (6) the suspect was transported to another location; (7) the suspect's vehicle was blocked; and (8) physical force was used. *Webb v. State*, No. 06-03-00099-CR, 2004 WL 905911, at *2 (Tex. App.—Texarkana) (not designated for publication) (footnotes omitted), *aff'd*, 2005 WL 475119 (Tex. Crim. App. 2005) (not designated for publication).

Estrada was stopped for the offense of not displaying a front license plate. TEX. TRANSP. CODE ANN. § 502.473(a) (West Supp. 2012). The Supreme Court has held that traffic stops are generally temporary detentions, which are not custodial in nature. *Berkemer v. McCarty*, 468 U.S. 420, 436–42 (1984) (explaining that traffic stops are often brief, lack extensive questioning, involve a small number of officers, and can be viewed by passersby). However, depending on the officers' conduct, questioning during a temporary detention can escalate into a custodial interrogation. *Id.* at 439 n.29, 440; *Dowthitt*, 931 S.W.2d at 255.

Interrogation has been defined as express questioning or words or actions by police that "the police should know are reasonably likely to elicit an incriminating response." *Rhode Island v. Innis*, 446 U.S. 291, 301–02 (1980). However, warnings are required only when a suspect is interrogated while in custody or its equivalent; questioning outside of a custodial environment is not prohibited, even if it is likely to provoke an incriminating statement. *Id.* at 298; *see also Minnesota v. Murphy*, 465 U.S. 420, 429–33 (1984); *Jones v. State*, 742 S.W.2d 398, 403 (Tex. Crim. App. 1987) (en banc). When considering whether a temporary detention has transformed into a custodial interrogation, it is important to remember *Miranda*'s focus on "the compulsive aspect of custodial interrogation," not merely "the strength or content of the government's suspicions at the time the questioning was conducted." *Stansbury*, 511 U.S. at 323.

### B. Analysis

On appeal, Estrada essentially provides three reasons why this court should overrule the trial court's determination that this detention was noncustodial. First, Estrada contends this case is factually similar to *State v. Ortiz* and *Ramirez v. State*, but distinguishable from *Webb v. State* and *Henderson v. State*. Next, Estrada claims Officer Rodriguez's subjective intent to detain her was manifested through the officer's actions and, as a result, a reasonable person in her position would have felt restrained to the degree associated with a formal arrest. Lastly, she argues

Officer Rodriguez's question was not necessary to confirm or dispel his suspicions, but instead was asked to elicit an incriminating response.

### a. Cases Relied on by the Parties

In making their respective custody arguments, each party cites two Texas cases for support. Estrada points to *State v. Ortiz*, 346 S.W.3d 127 (Tex. App.—Amarillo 2011), *aff'd*, 2012 WL 5348503 (Tex. Crim. App. Oct. 31, 2012), and *Ramirez v. State*, 105 S.W.3d 730 (Tex. App.—Austin 2003, no pet.), to buttress her contention that Officer Rodriguez's discovery of the marijuana escalated the stop from a temporary detention to a custodial arrest. In response, the State asserts that the circumstances of this case are more akin to those found in *Henderson v. State*, No. 03-09-00034-CR, 2009 WL 3048705 (Tex. App.—Austin Sept. 23, 2009, no pet.) (mem. op., not designated for publication), and *Webb v. State*, 2004 WL 905911, in which the appellants were determined not to be in custody when questioned by police.

Turning first to the cases cited by Estrada, we will highlight the relevant facts of each case:

*State v. Ortiz*

- During a traffic stop, Officer Johnson detected a faint odor of marijuana.

- After questioning Ortiz and his wife about their destination, Johnson asked Ortiz, "How much drugs are in the car?" and Ortiz responded, "No, no, no, no."

- Ortiz consented to a search of his vehicle and his person.

- Backup officers, Pierpoint and Vargas, were called to the scene, creating a total of three officers and two patrol cars.

- Ortiz and his wife were both subjected to pat-down searches and handcuffed prior to the questioning in issue.

- After Ortiz was handcuffed, Pierpoint approached Johnson and Ortiz and, in Ortiz's presence, confirmed that he and Vargas had found something under Mrs. Ortiz's skirt.

- Subsequently, Johnson asked Ortiz what kind of drugs his wife had under her skirt, and Ortiz responded "coca" and "cocaina."

The trial court, the El Paso Court of Appeals, and the Court of Criminal Appeals concluded that Ortiz was in custody when he made the "cocaine statement." *Ortiz*, 2012 WL 5348503, at *6. In coming to this conclusion, the Court of Criminal Appeals relied heavily upon four circumstances that would cause a reasonable person in Ortiz's position to believe he was restrained to the degree associated with an arrest: (1) Officer Johnson expressed to Ortiz his suspicion that Ortiz possessed drugs by accusing Ortiz of having drugs within minutes of making the stop ("How much drugs are in the car?"), performing a search of the car and Ortiz, and asking Ortiz, "What kind of drugs does she have?" after the pat down of Mrs. Ortiz revealed something was attached to her leg; (2) two additional law enforcement officers arrived on the scene, causing the officers to outnumber the suspects; (3) both Ortiz and his wife were subjected to pat-down searches and handcuffed[2]; and (4) after handcuffing Ortiz, Pierpoint communicated to Johnson, in Ortiz's presence, that he and Vargas found something under Mrs. Ortiz's skirt. *Ortiz*, 2012 WL 5348503, at *4. Regarding the fourth circumstance, the court stated it "would have further reinforced [Ortiz]'s perception that both his wife and, by association, he himself, were now under detention for some illegality substantially more serious than a mere speeding infraction." *Id.*

*Ramirez v. State*

- After arriving at Ramirez's home in response to a neighbor's complaint, an officer noticed marijuana paraphernalia, marijuana residue, and the odor of marijuana as Ramirez stepped out of the garage, closing the door behind him.

---

[2] Officer Johnson testified Ortiz was handcuffed for safety reasons, which cannot ordinarily be the basis for a custody determination, but this is still a degree of restraint not present in this case. *Ortiz*, 346 S.W.3d at 130; *see Rhodes v. State*, 945 S.W.2d 115, 117 (Tex. Crim. App. 1997).

- A second individual, Reynosa, exited the garage and left the door partially open. The officer recognized Reynosa as a suspect in a shooting and became concerned that Reynosa or Ramirez may have had weapons, so the officer called for backup.

- Reynosa was subjected to a pat down, which revealed a knife and a plastic bag containing marijuana. Reynosa was arrested and moved away from the garage.

- Ramirez was also subjected to a pat down, and while conducting the pat down, the officer told Ramirez he was being detained and placed him in handcuffs.

- The officer informed Ramirez that he could see drug paraphernalia and drug residue in the garage and asked, "Is there anything else I'm going to find in there that's illegal, any more marijuana?" Ramirez replied, "Well, I guess there's some pot in the red cooler."

The Austin Court of Appeals determined the appellant was in custody at the time the officer asked whether he was going to find anything else because a reasonable person in Ramirez's position would likely believe his freedom of movement had been restrained to the degree associated with an arrest. *Ramirez*, 105 S.W.3d at 740.

The relevant facts of the State's cases are as follows:

*Henderson v. State*

- During a traffic stop, Officer Tippett detected the odor of burnt marijuana in the vehicle.

- Tippett asked if Henderson and his passenger had been smoking marijuana, and Henderson replied that they had not.

- For officer safety reasons, Henderson was subjected to a pat down, during which Tippett discovered rolling papers in his pocket. Henderson was handcuffed, but Tippett's partner, Officer Pack, advised Henderson that he was not under arrest.

- Pack then asked the passenger to exit the vehicle, handcuffed her for safety purposes, and searched the vehicle.

- The search revealed two marijuana cigarettes, one of which had pink lipstick on it, and a bag of marijuana.

- Tippett asked, "Whose weed is it?" and stated it would be attributed to the passenger because it was nearest to her. In response, Henderson stated, "No, it's mine." Despite the pink lipstick, Henderson insisted, "It's my joint, it's my joint, it ain't hers. It's my joint."

The Austin Court of Appeals acknowledged that Tippett's inquiry was reasonably likely to provoke an incriminating response; however, the court held that Henderson was not in custody when the inquiry was made because he was handcuffed for officer safety and expressly told he was not under arrest, and because the detention was visible to passersby so the suspects were less likely to face abusive or coercive tactics. *Henderson*, 2009 WL 3048705, at *5.

*Webb v. State*

- During a traffic stop, Webb consented to a search of his vehicle, and the officer found trace amounts of methamphetamine in a closed container on a seat.

- The officer asked all three vehicle occupants to whom the item belonged, and one of the passengers stated "it didn't belong to any of them."

- The officer then told the vehicle occupants to place their hands on the rear of the truck and advised them they were being arrested.

- At that time, Webb claimed ownership of the narcotics, and he was placed under arrest.

The Texarkana Court of Appeals determined Webb was not in custody when the officer *asked* about ownership of the drugs because the totality of the circumstances indicated that no reasonable person would have felt restrained to the degree of an arrest at that point in time, despite the existence of probable cause. *Webb*, 2004 WL 905911, at * 3. The occupants were not restrained to the degree associated with a formal arrest until asked to place their hands on the vehicle and advised that they were under arrest, but Webb's subsequent statement was voluntarily made. *Id.* at 3–4. The Court of Criminal Appeals affirmed the appellate court's reasoning and conclusion. *Webb v. State*, No. PD-0826-04, 2005 WL 475119 (Tex. Crim. App. Mar. 2, 2005) (not designated for publication).

While there are similarities between *Ortiz*, *Ramirez*, and this case, *Ortiz* and *Ramirez* are factually distinguishable. The only critical circumstance present in *Ortiz* that is possibly present in this case is the expression of suspicion. Absent handcuffs, Officer Rodriguez did

communicate to Estrada and her passenger that he had found marijuana and suspected it belonged to one of them. However, Officer Rodriguez did not communicate his suspicion only to Estrada (like Johnson did to Ortiz), but instead, Officer Rodriguez questioned both Estrada and her passenger together about the substance. This is a key distinction between this case and *Ortiz* because in *Ortiz* the Court of Criminal Appeals emphasized the coercive nature of the actions and statements being directed to Ortiz individually.

Further, the following factors weighing in favor of custody were present in both *Ortiz* and *Ramirez*, but not in this case: (1) all individuals at the scene were subjected to pat-down searches; (2) the individuals at the scene were physically separated; (3) all individuals at the scene were handcuffed prior to the questioning at issue; (4) when the defendants were asked the incriminating questions, the other individuals at the scenes had already been placed under arrest; and (5) the officers questioned only the defendants, instead of making general inquiries to all individuals at the scenes. Also unlike the instant case, in *Ortiz*, the suspects were outnumbered by officers—there were at least three officers and two patrol cars. Moreover, the custody determination in *Ramirez* is supported by the following circumstances that are not present in the case at hand: (1) the appellant was told he was being detained; and (2) the interaction occurred near a house, which is farther removed from the road and the visibility of passersby. All in all, *Ortiz* and *Ramirez* depict more aggressive, police-dominated settings than the present case.

On the other hand, the interaction in this case is very comparable to the detentions in *Henderson* and *Webb*. Similar to the appellants in *Henderson* and *Webb*, Estrada was stopped for a traffic violation in a place visible to passersby, and her car was subsequently searched and drugs were discovered. In all three situations, the officers asked who owned the drugs. In *Webb* and the case at hand, there were no significant events between the time the passengers were taken out of the car and the time the inquiry was made. In *Henderson*, the appellant and his

passenger were handcuffed and subjected to pat downs for officer safety purposes. Although handcuffing for officer safety can sometimes preclude a custody determination,[3] *Henderson* still involved a greater degree of restraint than the case at hand and was determined to be noncustodial on otherwise substantially similar facts.

Estrada argues *Henderson* is distinguishable because the officer informed the appellant he was not under arrest. This distinction is insufficient because whether the officer tells the suspect he is free to leave is only one factor to consider. *Dowthitt*, 931 S.W.2d at 255. Moreover, the officer made that statement because he was handcuffing the appellant, and he did not want the appellant to believe he was being arrested. *Henderson*, 2009 WL 3048705, at *1. Estrada was never placed in handcuffs, a patrol car, or any other type of physically restrictive situation that would necessitate a custodial disclaimer.

### b. *Manifestation of Officer Rodriguez's Subjective Intention*

Next, Estrada argues she was in custody because Officer Rodriguez had already decided she was being detained and was not free to leave, and she claims this intention was manifested to her through the actions of Officers Rodriguez and Alvarado. Officer Rodriguez testified Estrada was not free to leave while the car was being searched or after the marijuana was found; however, he never communicated his subjective intention to detain Estrada to Estrada or her passenger. Still, Estrada argues the actions of Officers Rodriguez and Alvarado manifested this intention, and she points to the following facts in support of her argument: (1) Estrada and her passenger were required to exit the vehicle after Officer Rodriguez detected the odor of marijuana; (2) the vehicle was searched without consent; (3) Estrada and her passenger were

---

[3] *See Rhodes v. State*, 945 S.W.2d 115, 117 (Tex. Crim. App. 1997).

monitored by Officer Alvarado while Officer Rodriguez conducted the search[4]; (4) although Estrada lived only a few houses from the location of the stop, she was not allowed to go to her home[5]; and (5) Estrada was not told she was free to leave after the marijuana was found.

As previously mentioned, an officer's subjective intent or viewpoint is irrelevant unless it is communicated or manifested to the suspect in some way. *Stansbury*, 511 U.S. 323–24. "A policeman's unarticulated plan has no bearing on the question [of] whether a suspect was 'in custody' at a particular time; the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." *Berkemer*, 468 U.S. at 442. Because Officer Rodriguez never communicated his intent to Estrada or her passenger, the question becomes whether the officers' actions at the stop were enough to manifest an intention to detain Estrada. Many of the facts Estrada relies on are merely typical procedure associated with a traffic stop or an encounter where an officer detects the odor of marijuana. *See Berkemer*, 468 U.S. at 436–37; *Moulden*, 576 S.W.2d at 819 (upholding the warrantless search of a vehicle after an officer detected the odor of burnt marijuana). Even assuming, arguendo, that the above facts indicate a manifestation of Officer Rodriguez's intent to detain her, manifestation of a subjective intention is only one factor to consider. *Dowthitt*, 931 S.W.2d at 254–55. Under the totality of the circumstances, this possible manifestation is not enough to tilt the scale in favor of custody.

### c. *Nature of the Inquiry*

Next, Estrada claims Officer Rodriguez's inquiry was not necessary to confirm or dispel his suspicion that Estrada or her passenger possessed marijuana because he had already found it. Instead, she asserts, it was an attempt to elicit an incriminating statement. Although Officer

---

[4] The record is silent on Officer Alvarado's actions during the stop. Under the bifurcated standard of review, we presume the trial court was not persuaded by this assertion and give deference accordingly.
[5] This assertion ignores the fact that an individual is not free to leave during an investigative detention. *State v. Sheppard*, 271 S.W.3d 281, 289 (Tex. Crim. App. 2008).

Rodriguez's question calls for an incriminating response, such questioning is not prohibited in noncustodial interactions. *Innis*, 446 U.S. at 301–02; *Jones*, 742 S.W.2d at 403.

The evidence does not rise to the level of coercive surrounding circumstances that would cause a reasonable person to feel compelled to speak. Estrada may not be accustomed to being removed from her vehicle, but she was not placed in an unfamiliar or police-dominated environment. Estrada was stopped on the same street as her residence was located, there were the same number of officers as vehicle occupants, and the detention was visible to passersby. Officer Rodriguez did not badger Estrada with questions until her will was worn down, nor did he indicate that there would be unfavorable consequences if his question went unanswered. Instead, Officer Rodriguez testified he never threatened to arrest Estrada or her passenger if neither claimed ownership of the marijuana. Additionally, the officers did not draw their weapons, and no physical force was used. In fact, none of the factors articulated in *Webb* as indicative of custody are present in this case. *See Webb*, 2004 WL 905911, at \*2. In light of the foregoing, we conclude this detention was not the type of coercive environment contemplated by *Miranda* and its progeny.

## CONCLUSION

After considering all of the circumstances surrounding the detention, we cannot conclude that Estrada was subjected to custodial interrogation. The circumstances in this case do not indicate a level of coercion that would lead a reasonable person to believe they were detained to the degree associated with a formal arrest. Accordingly, we affirm the trial court's ruling denying Estrada's motion to suppress.

Catherine Stone, Chief Justice

DO NOT PUBLISH